**UNITED STATES of America,
Plaintiff,**

v.

**LOUISVILLE AND NASHVILLE RAIL-
ROAD COMPANY, Defendant.**

**Civ. A. No. 74-234-N.**

United States District Court,
M. D. Alabama, N. D.

Feb. 4, 1975.

Calvin C. Pryor, Asst. U. S. Atty., for plaintiff.

William V. Linne, Steiner, Crum & Baker, Montgomery, Ala., for defendant.

## MEMORANDUM OPINION

VARNER, District Judge.

This cause is now submitted to the Court on the stipulation by and between the Plaintiff, United States of America, and the Defendant, Louisville and Nashville Railroad Company, wherein they submit the above-styled cause to the Court for determination based on the pleadings, answers to interrogatories, responses to requests for admission of facts, and affidavits. The complaint herein charges the loss of 34 cases of butter from a rail shipment by Plaintiff on Defendant railroad for which the

railroad is allegedly liable under 49 U.S.C. § 20(11).[1] The defense *inter alia* is that, by inserting the words "Shipper's load, count, and seal" in the bill of lading, the railroad is absolved of liability for damages caused by the nonreceipt of goods described in the bill of lading. 49 U.S.C. § 101.[2]

## I. STATEMENT OF FACTS

The Defendant, Louisville and Nashville Railroad Company, is a public carrier corporation organized and existing under the laws of the State of Kentucky and, as such, operates a line of railroads within this district, including the line in question.

On November 9, 1972, the Commodity Credit Corporation, an instrumentality of the United States, 15 U.S.C. § 714 et seq., as part of a federal educational aid program, shipped over 2,000 cases of such butter in the subject shipment under shipper's seal from Nashville, Tennessee, to Montgomery, Alabama, with stops for partial unloading and resealing by local school authorities in Anniston, Alabama, and Wetumpka, Alabama. Jurisdiction is conferred on this Court by § 4(c) of the Commodity Credit Corporation Charter Act, as amended. 15 U.S.C. § 714b(c).

The car in question was loaded, sealed, unsealed on several occasions, unloaded, supervised, and resealed under the constant supervision of responsible employees or agents of the shipper and the consignees. Unbroken seals were maintained on the doors of the car at all times when they were in custody of the Defendant.

Nevertheless, final receipt of the shipment in Montgomery disclosed a short-age of 34 cases of the 834 cases purportedly shipped for delivery to Montgomery. The evidence is silent as to what happened to the 34 unaccounted for cases of butter.

Were this case a problem of deciding which of the consignor, consignees, carrier or their agents was least responsible according to their own affidavits, this Court's task would be more difficult. Here, however, the Plaintiff accepts whatever, if any, fault may be cast on consignor, consignee and all agents of each and insists, in light of existing law, that the loss was caused by the Defendant Railroad. Here the physical evidence for the railroad—the admitted presense of the seals on the car except when Plaintiff's agents were supervising—makes the Plaintiff's position untenable, in the view of this Court.

The evidence shows that the shipment was a "Shipper's load, count, and seal" and that, as such, the cases of butter were not counted by employees of the carrier/defendant when they were loaded by the shipper in Nashville. The evidence does, however, reflect that the butter was carried exclusively over the Defendant's lines.

## II. CONCLUSIONS OF LAW

Title 49, § 20(11) of the United States Code provides that any common carrier, railroad or transportation company who issues a bill of lading shall be liable to the lawful holder thereof for any loss, damage, or injury to shipments *caused by* it.

This liability is not, of course, absolute but is subject to exceptions and limitations. One of these exceptions is contained in 49 U.S.C. § 101. That section

---

1. "Any common carrier, railroad, or transportation company subject to the provisions of this chapter receiving property for transportation from a point in one State * * * to a point in another State, * * * shall issue a receipt or bill of lading therefor, and shall be liable to the lawful holder thereof for any loss, damage, or injury to such property caused by it * * *."

2. " * * * The carrier may also by inserting in the bill of lading the words 'Shipper's weight, load, and count or other words of like purport, indicate that the goods were loaded by the shipper and the description of them made by him; and if such statement c true, the carrier shall not be liable for damages caused by * * * the nonreceipt * * * of the goods described in the bill of lading * * *."

provides that the carrier may insert into the bill of lading words such as "Shipper's load, count and seal" which, if true, will absolve the carrier of liability for damages caused by improper loading, nonreceipt of goods or misdescription of goods described in the bill of lading. See e. g., Federated Department Stores v. Brinke, 450 F.2d 1223, 1226 (5th Cir. 1971). The obvious purpose of such an agreement for shipment is to avoid unnecessary supervision by the carrier of loading and unloading.

The courts have considered § 101 and have qualified it somewhat. Though the section states in no uncertain words that the inclusion of words such as "Shipper's load, count, and seal" in the bill of lading will render the carrier not liable for any damage to the shipment, the courts have construed the section to mean that, if such words are included, the burden is on the shipper to prove that the amount specified was loaded and that a lesser amount was unloaded by the consignee. Modern Tool Corp. v. Pennsylvania RR Co., 100 F.Supp. 595, 597 (D.C.N.J.1951).

■ The Fifth Circuit has considered this situation in Dublin Co. v. Ryder Truck Lines, 417 F.2d 777 (5th Cir. 1969). In that case the court held that a "Shipper's load and count" bill of lading without additional evidence was not sufficient proof to establish the number of units loaded. In the instant cause, were it not for the affidavit of Mr. B. O. Jones, an employee of the shipper, the Plaintiff's case would fail. However, in Mr. Jones' affidavit he states that the requisite number of cases of butter were loaded, thereby, if believed, corroborating the bill of lading and complying with the burden which is the Plaintiff's according to *Dublin*, supra.

Once the Plaintiff's burden is afforded proper treatment, the effect of § 101 is negated, and the Court is thrust back to a consideration of this case based on § 20(11).

■ As noted above, § 20(11) provides that any common carrier, railroad, etc., who issues a bill of lading shall be liable to the lawful holder thereof for any loss, etc., to shipments "caused by" it. The evidence indicates that at all times relevant to this matter, with slight deviations, the shipper, the consignees, or the consignees' agents were on duty and supervised the loading, unloading and resealing processes. What small void or discrepancy there is in the evidence, if any, in regard to the constant supervision by Plaintiff's agents is not fatal to either side.

However, the presence of seals on the car during all times when the Defendant could be considered responsible for the shipment unequivocally establishes the Defendant's case. A seal, as was noted in Blue Bird Food Products Co. v. Baltimore & Ohio RR Co., 492 F.2d 1329, 1333 (3rd Cir. 1974), serves as a type of security device in that it provides the shipper's assurance to the consignees that the load has not been interfered with from the time it left the shipper to the time it reached the consignee.

From the foregoing, it affirmatively appears that the loss or shortage in cases of print butter could not have been "caused by" the Defendant, since, during the time when the shipment was in the care or custody of the Defendant, the shipment was under constant seal. Thus, it is the opinion of the Court that the Plaintiff has not shown that the shortage of print butter was "caused by" the Defendant, and therefore, Plaintiff's case has failed to comply with the requirements of Title 49, § 20(11), U.S.C. Accordingly, it is the

Order, judgment and decree of this Court that judgment be entered in favor of the Defendant and against the Plaintiff in the above-styled cause.