**TRANSATLANTIC MARINE CLAIMS AGENCY, INC., Plaintiff,**

v.

**M/V "OOCL INSPIRATION," her engines, boilers, etc., Orient Overseas Container Line (U.K.) Ltd. and Sea–Land Service, Inc., Defendants.**

**No. 95 Civ. 10041 RWS.**

United States District Court, S.D. New York.

April 3, 1997.

---

Stephen Spicer, New York City, for Plaintiff.

Barger & Wolen (Henry F. White, Jr., of counsel), New York City, for Defendants.

## OPINION

SWEET, District Judge.

Plaintiff Transatlantic Marine Claims Agency, Inc. ("Transatlantic") has moved for summary judgment pursuant to Rule 56, Fed. R. Civ. P, to recover a cargo loss. Defendants Sea–Land Service, Inc. ("Sea–Land"), Orient Overseas Container Line (U.K.), Ltd. ( "OOCL" ) and M/V OOCL INSPIRATION (the "INSPIRATION") (collectively, the "Defendants") have cross-moved for summary judgment.

For the reasons set forth below, the Plaintiff's motion for summary judgment will be granted and the Defendants' cross-motion for summary judgment will be denied.

### Parties

Transatlantic is a New York entity.

Sea–Land is a foreign entity with an office in Elizabeth, New Jersey.

OOCL is foreign entity with an office in New York, New York.

The INSPIRATION is a vessel which has been in this district.

*Prior Proceedings*

The complaint in this action was filed on November 28, 1995, alleging a loss resulting from damages to cargo carried on the INSPIRATION, a vessel owned and operated by Sea–Land, and under a bill of lading issued by OOCL.

On October 29, 1996, Transatlantic moved for summary judgment. On January 7, 1997, Sea–Land and OOCL cross-moved for summary judgment. Oral argument on the motions was heard on January 22, 1997. Further submissions were received by the Court through February 3, 1997, at which time the motions were considered fully submitted.

*Facts*

On March 25, 1994, 367 rolls of paper (the "cargo") were delivered to OOCL or Sea–Land in Antwerp, Belgium for carriage to Charleston, South Carolina. The 367 rolls of paper were transported. in 26 containers. OOCL issued bill of lading # 321 68580, dated March 25, 1994, (the "Bill of Lading") which acknowledged the cargo to be in apparent good order and condition.

The Bill of Lading stated that the INSPIRATION was the vessel to carry the cargo. The INSPIRATION was owned and operated by Sea–Land at the time of the shipment. Sea–Land has voluntarily increased its limit of liability above the COGSA limit of $500.00 per package by adopting the limits stated in the Hague–Visby Rules.[1]

The Bill of Lading's relevant terms are as follows:

**TERMS AND CONDITIONS**

RECEIVED for shipment in external apparent good order and condition, unless otherwise indicated, the number of packages or customary freight units said by the Merchant to contain the Goods described in the "Particulars Furnished by Shipper" on the face hereof. Weights, measurements, marks, numbers, quantity, contents and value mentioned herein are to be considered unknown by Carrier.

1) **IDENTITY OF CARRIER.**

    \*     \*     \*     \*     \*     \*

OOCL (U.K.) shall be deemed to be the Carrier for Goods transported (in either direction) between the North American continent and Europe/Mediterranean.

    \*     \*     \*     \*     \*     \*

2) **DEFINITIONS.** Without limitation of any definition in any applicable law wherein mentioned: "VESSEL" shall include the vessel(s) named in this Bill of Lading ... and any vessel, craft, lighter or other means of transportation whatsoever owned, chartered, operated or controlled and used by the Carrier or Participating Carrier in the performance of this contract. "CARRIER" shall include the party on whose behalf this Bill of Lading has been signed, the Vessel, her owner(s) operator(s), demise, time, slot and space Charterers or any person or entity to the extent bound by this Bill of Lading ... "PARTICIPATING CARRIER" shall include any other water, land or air carrier performing any part of the carriage provided herein ...

"PORT OF LOADING" shall mean the place where the Goods are received for marine transport by the Carrier. "PORT OF DISCHARGE" shall be the place where the Goods are to be discharged from the Carrier's Vessel, "PLACE OF RECEIPT shall be the place where the GOODS are received from the Merchant by the Carrier, Participating Carrier or their respective agents; PLACE OF DELIVERY" shall be the place where the Goods are delivered by the Carrier or the Participating Carrier to the Merchant ..."

3) **CARRIER'S TARIFF.** The terms of the applicable tariff(s) of the Carrier

---

1. The Hague–Visby Rules provide that: "Unless the nature and value of such goods have been declared by the shipper before shipment and inserted in the bill of lading, neither the carrier nor the ship shall in any event be or become liable for any loss or damage to or in connection with the goods in an amount exceeding the equivalent of 10,000 francs per package or unit or 30 francs per kilo of gross weight of the goods lost or damaged, whichever is the higher." Protocol to Amend the International Convention for the Unification of Certain Rules of Law Relating to Bills of Lading (Visby Amendments), Article 2(a).

identified in Clause 1 hereof are incorporated herein ... In the case of inconsistency between this Bill of Lading and the applicable tariff(s), this Bill of Lading shall prevail except in the United States of America where the provisions of the tariff shall prevail.

4) **THE TRANSPORTATION.** The Carrier identified in Clause 1 hereof agrees to perform the ocean transportation between the Port of Loading and Port of Discharge on the Vessel named in the Bill of Lading or any substitute vessel. Except as set forth in Clause 29, with respect to all other transportation the Carrier agrees to provide transportation of the Goods for and on behalf of the Merchant in accordance with its tariff(s) and those of Participating Carriers and without waiver of any defenses or exemptions provided by law, if applicable from the Place of Receipt to the Place of Delivery ... Each stage of the transport shall be governed according to any law and tariffs applicable to such stage. The care, custody and carriage of the goods during any period on which a Participating Carrier or its contractor or agent is in possession of the Goods shall be the sole responsibility of the Participating Carrier and not the Carrier. As to all other carriage covered by this Bill of Lading, if it cannot be established where the damage or loss occurred as between the Merchant and the Carrier or any Participating Carrier that the loss or damage occurred aboard the Vessel during ocean carriage and the Carrier and the Carrier's liability shall be determined in accordance with Clause 23 hereof.

\*     \*     \*     \*     \*     \*

23) **CLAUSE PARAMOUNT.** All carriage under this Bill of Lading to or from the United States of America shall have effect subject to the provisions of COGSA ... which shall be deemed to be incorporated herein.

OOCL agreed to carry the goods from delivery to the INSPIRATION at Antwerp to the time the goods were discharged at Charleston. Clause 2 of the Bill of Lading states that OOCL, the Vessel INSPIRATION and the Vessel Owner, Sea–Land, are considered the carriers.

The INSPIRATION departed Antwerp on March 25, 1994, steamed directly to Charleston, South Carolina, arrived on April 7, 1994 and discharged the containers that same day. The containers were later transported to Nashville, Tennessee by rail and truck.

On or about May 23, 1994, OOCL was notified that 71 rolls of paper in 5 containers were damaged. On May 25, 26 and 27, OOCL's surveyor attended surveys conducted jointly with Transatlantic representatives and noted that 43 paper rolls in three containers stowed in the bottom of the No. 3 Hold were contaminated by seawater, and the paper in a separate container stowed on the fourth tier in the No. 6 hold was also contaminated by seawater. Lab analysis conducted by both surveyors confirmed that the rolls were contaminated with seawater.

Transatlantic's current claim is based on damage to the 43 rolls of paper in the No. 3 hold. These 43 rolls had an invoice value of $80,429.86. The 43 rolls were sold at salvage for $17,663.00, a loss in value of $62,766.86.

### Discussion

### I. *The Standard for Summary Judgment*

Rule 56(e) of the Federal Rules of Civil Procedure provides that a court shall grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See Silver v. City Univ.,* 947 F.2d 1021, 1022 (2d Cir.1991).

"The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists and that the undisputed facts establish her right to judgment as a matter of law." *Rodriguez v. City of New York,* 72 F.3d 1051, 1060 (2nd Cir. 1995). In determining whether a genuine issue of material fact exists, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Brady v. Town of Colchester,* 863 F.2d

205, 210 (2d Cir.1988); *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

A party seeking to defeat a summary judgment motion cannot "rely on mere speculation or conjecture as to the true nature of facts to overcome the motion." *Lipton v. Nature Co.*, 71 F.3d 464, 469 (2d Cir.1995) (quoting *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir.1986)). Rather, the responding party "must show the existence of a disputed material fact in light of the substantive law." *Peer Int'l Corp. v. Luna Records, Inc.*, 887 F.Supp. 560, 564 (S.D.N.Y.1995).

## II. *Transatlantic Has Demonstrated Liability*

■ In order to state a *prima facie* case of liability, Transatlantic must meet its initial burden of "showing either through direct or circumstantial evidence that the damage was caused by the carrier's negligence and not by any inherent vice of the cargo." *Siderius v. M/V Amilla*, 880 F.2d 662, 664 (2d Cir.1989) (internal citations omitted).

Plaintiffs have submitted evidence demonstrating that: 1) the cargo was received by the defendants in good order and condition; 2) the cargo was carried on the INSPIRATION; 3) the INSPIRATION was owned and operated by defendant Sea–Land Service, Inc.; 4) the cargo was carried under a bill of lading issued by OOCL; 5) the cargo was found damaged by sea water wetting; 6) the cargo was confirmed damaged by sea water by both OOCL's and Transatlantic's surveyors; and 7) the cargo was determined to have sustained a loss in value as a result of such damage.

■ Transatlantic has met its burden of demonstrating a *prima facie* case of the Defendants' liability for the damage to the cargo. Defendants contend that an issue of fact remains as to exactly where and how the cargo was damaged. Defendants point to several facts: one of the damaged containers for which Transatlantic seeks recovery was not in the same hold as the other damaged containers; Transatlantic does not seek recovery for all the damaged cargo throughout

the ship; and no tide marks were found on the sides of the containers. According to Defendants, in the absence of evidence that the containers were moved during the ocean voyage, the different locations of the damaged containers demonstrates that the damage to various containers was not the result of a common causative factor.

The Defendants have failed to raise a material issue of fact as to whether the damage was caused by their negligence. The question of precisely how, where and when the damage occurred is irrelevant in the absence of some credible evidence that the damage was caused by something other than Defendants' negligence. *See Siderius*, 880 F.2d at 664 (where plaintiff has met prima facie case and the defendants have not submitted credible evidence that goods were damaged prior to voyage, summary judgment granted in plaintiff's favor).

While Defendants may have raised an issue of fact as to precisely when and where the damage occurred, that issue is not a *material* issue of fact, as required to defeat summary judgment. *See Fink v. New York City Dep't of Personnel*, 855 F.Supp. 68 (S.D.N.Y.1994), *aff'd*, 53 F.3d 565 (materiality of facts determined by applicable substantive law). The record establishes that the damage was caused by the introduction of water into the containers from an outside source during the voyage. *See Arkwright Mut. Ins. Co. v. M/V Oriental Fortune*, 745 F.Supp. 920, 924 (S.D.N.Y.1990). Transatlantic's motion for summary judgment will therefore be granted with respect to liability.

## III. *Sea-Land's Tariff Applies*

■ Transatlantic contends that it is entitled to full recovery based on Sea–Land's tariff, which is based on the Hague–Visby limit, and is therefore higher than the $500 limit imposed by the Carriage of Goods by Sea Act, 46 U.S.C.App. 1304(5) ("COGSA"). The Defendants contend that pursuant to the Bill of Lading, the COGSA $500 limit applies to Transatlantic's claim.

Several provisions of the Bill of Lading are relevant to the issue of whether the $500 per package limitation of COGSA, or the higher

**60**

limit adopted by Sea–Land, applies to Transatlantic's claim here.

First, Clause 1 identifies OOCL as "the Carrier for Goods transported (in either direction) between the North American continent and Europe/Mediterranean," such as the goods at issue here. Clause 2, however, provides that both OOCL and Sea–Land are carriers: "CARRIER' shall include the party on whose behalf this Bill of Lading has been signed, the Vessel, her owner(s) operator(s)." Clause 2 further provides: "'PARTICIPATING CARRIER' shall include any other water, land or air carrier performing any part of the carriage provided herein ..."

Sea-Land is thus both a carrier and a participating carrier. Defendants contend that although both OOCL and Sea–Land are carriers, only OOCL's tariff is applicable. But clause 4 of the Bill of Lading states: "Each stage of the transport shall be governed according to any law and tariffs applicable to such stage." The INSPIRATION, which is owned by Sea–Land, transported the cargo in question during the sea portion of the voyage. Because Sea–Land's tariff mandates a higher limitation than does OOCL's, OOCL has raised its limit of liability by incorporating the Sea–Land tariff (the "applicable tariff") into the Bill of Lading. *See Daval Steel Products v. M/V Acadia Forest*, 1988 AMC 1669, 683 F.Supp. 444 (S.D.N.Y.1988).

In addition, Clause 4 of the Bill of Lading states:

The care, custody, carriage of the Goods during any period in which a Participating Carrier or its contractor or agent is in possession of the Goods shall be the sole responsibility of the Participating Carrier and not the Carrier.

Pursuant to Clause 4, Sea–Land is responsible for the care of the goods at issue here while those goods were in Sea–Land's custody, *i.e.*, during the sea voyage when the water damage occurred. Moreover, pursuant to Clause 3 of the Bill of Lading, which states that "applicable tariff(s)" prevail over the Bill of Lading, Sea–Land's tariff applies to the cargo loss here. See *Gilbert Imported Hardwoods v. 245 Pkgs. of Guatambu Squares*, 508 F.2d 1116, 1120 (5th Cir.1975)

("Once a tariff is established by the carrier and approved by the Federal Maritime Commission, the tariff binds both the carrier and the shipper with the force of law").

To the extent the Bill of Lading is ambiguous with regard to whether COGSA or Sea–Land's tariff should apply, such ambiguity must be interpreted against the drafting party, in this case the Defendants. *See Port of Seattle v. Star Bulford*, 1977 AMC 251, 255 (W.D.Wash.1976) ("The tariff must be construed strictly and any reasonable ambiguity or doubt resolved against the party drafting the tariff.").

██ Finally, Sea–Land is liable as a bailee for damage to the cargo while in Sea–Land's possession. In *Tuscaloosa Steel v. M/V Naimo*, 1993 AMC 622, 627, 1992 WL 477117 (S.D.N.Y.1992), this Court held:

The Court agrees that fairness dictates that the law of bailing be an available remedy to a shipper where the owner is not bound to the contract of carriage. Under the law of bailment, a bailor makes out a *prima facie* case of bailment by establishing that the goods were delivered in good condition and returned in damaged condition. *See Leather's Best Inc. v. S.S. Mormaclynx*, 1971 AMC 2383, 2397, 451 F.2d 800, 812 (2d Cir.1971). The burden of production, but not the burden of persuasion, then shifts to the bailee. *See id.* To rebut the bailor's *Prima facie* case, the bailee must show either how the disaster in fact occurred and that this was in no way attributable to his negligence, or that he exercised the requisite care in all that he did with respect to the bailed article so that, regardless of how the accident in fact transpired, it would not have been caused by any negligence on his part. *Id.* (quoting *Richmond Sand & Gravel Corp. v. Tidewater Constr. Corp.*, 170 F.2d 392, 393–94 (4th Cir.1948)).

██ As set forth above in addressing Defendants' liability for the water damage at issue here, these conditions are met here. The cargo was damaged by sea water; Sea–Land had custody of cargo while crossing the Atlantic Ocean; and the cargo was not in good order and condition upon delivery to

Tennessee. Defendants have not provided an alternate explanation of how the cargo was sea water wetted, or proof that Sea–Land exercised the requisite care with respect to the bailed cargo. Consequently, Defendant Sea–Land is also liable as a bailee.

## Conclusion

For the reasons set forth above, Transatlantic's motion for summary judgment is hereby granted and the Defendants' cross-motion for summary judgment is hereby denied.

It is so ordered.