**AMERICAN HOME ASSURANCE CO., a/s/o, Liberty Hardware Mfg. Co., Plaintiff,**

v.

**ZIM JAMAICA, her engines, boilers, etc., and Zim Israel Navigation Company, Ltd., Defendants.**

**No. 01 Civ. 2854(PKL).**

United States District Court, S.D. New York.

Dec. 24, 2003.

---

Edward C. Radzik, Donovan, Parry, McDermott & Radzik, New York City, for Plaintiff.

John A. Orzel, De Orchis, Walker & Corsa, LLP, New York City, for Defendants.

## OPINION AND ORDER

LEISURE, District Judge.

Plaintiff American Home Assurance Company ("American Home" or "plaintiff") moves for summary judgment under Rule 56(a) of the Federal Rules of Civil Procedure on the issue of liability against defendants m/v Zim Jamaica, her engines, boilers, etc., and Zim Israel Navigation Company, Ltd. ("Zim" or "defendants"). Defendants oppose the motion, contending that plaintiff has not made out a prima facie case and that several genuine issues of material fact remain for a trial to resolve. For the reasons set forth below, the Court grants in part and denies in part plaintiff's motion for summary judgment.

### Factual Background [1]

On or about July 19, 2000, a shipment of 3,571 cartons of bathroom fixtures arrived

---

1. Except where indicated, the facts below are undisputed. The Court has found simply by reviewing the evidence submitted with the moving papers that the parties agree on more than they admit in their respective Local Rule 56.1 statements. *See Giannullo v. City of New York*, 322 F.3d 139, 139 (2d Cir.2003) (" '[A] local Rule 56.1 statement is not itself a vehicle for making factual assertions that are otherwise unsupported in the record.' ") (quoting *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 74 (2d

in Greensboro, North Carolina, wet and damaged from exposure to freshwater. (Declaration of Carolyn Thomas, ¶¶ 2, 3 ("Thomas Decl."); Defendant's Rule 56.1 Statement in Response to Plaintiff's Statement, ¶¶ 7, 8 ("Def.'s 56.1 Resp."); Declaration of Dave Morris, ¶¶ 2–6 ("Morris Decl.").) Plaintiff is an insurer of the shipper of the cargo, Liberty Hardware Manufacturing Company ("Liberty"). Plaintiff claims that no genuine issue of material fact obscures the conclusion that defendants were responsible for the cargo when it was damaged.[2] Defendants are the carrier and ship that delivered the cargo from the port of Huangpu, China, to Greensboro. Defendants claim that disputed issues of material fact remain as to, among other things, (1) when the cargo was damaged, (2) when defendant took responsibility for the cargo, (3) whether defendant inspected the cargo upon receiving it, and (4) who had responsibility for the cargo when it was damaged.[3]

## I. *The Cargo*

The cargo began its trip to North Carolina in the Globe Express warehouse in Guangzhou, China, in the custody of plaintiff. (Declaration of Lao Xiji, ¶ 2 ("Xiji Decl."); Declaration of Assaad Najm, ¶ 2 ("Najm Decl.").) On June 7, 2000, truck driver Lao Xiji delivered a 40–foot shipping container from the port of Huangpu to the warehouse in Guangzhou. (Xiji Decl. ¶ 2.) Employees for Globe Express loaded the 3,571 cartons into the shipping container. (Xiji Decl. ¶¶ 2, 3; Najm Decl. ¶ 2.) The container was then closed and sealed by Lao Xiji and the warehouse manager, Assaad Najm. (Xiji Decl. ¶ 3; Najm Decl. ¶ 4.) Xiji drove the sealed container to the port of Huangpu.[4] (Xiji Decl. ¶ 3.) On or about June 7 or June 8, at the port of Huangpu, defendants inspected the container, confirmed the seal number, and received the container into their custody. (Xiji Decl. ¶ 4; Declaration of U. Furman, ¶ 2 ("Furman Decl."); Bill of Lading, attached to the Declaration of Joseph W. Hirn, III ("Hirn Decl.") as Exhibit A.) Defendants did not, however, inspect the cargo inside the container. (Hirn Decl. ¶ 5, Ex. A.) Defendants issued a clean bill of lading that included the phrase "Shipper's Load Stowage & Count: Said To Contain."

---

Cir.2001)). The Court bases the factual background below upon its review of the 56.1 statements of the parties and the affidavits and declarations submitted by each side.

**2.** In support of its motion, plaintiff submits declarations of Assad Najm, the manager of Globe Express Service in Guangzhou, China who supervised the loading of the cargo into the shipping container, of Lao Xiji, the truck driver who delivered the cargo from Guangzhou to the defendants at the port in China, and of Carolyn Thomas, the traffic manager responsible for receiving the cargo from defendants upon arrival in North Carolina.

**3.** In support of their opposition, defendants submit the declarations of Dave Morris, the claims adjuster who inspected the cargo for defendants after its arrival in North Carolina, of Joseph W. Hirn, III, the claims adjuster for defendants who investigated this matter, and of Uri Furman, the Director of Operations for defendants in the far east who is familiar with the cargo's status from its receipt by defendants until its departure from China. Both parties also reference deposition testimony from Captain Yemini Simantov, the Master of the Zim Jamaica which delivered the cargo, and weather data for the dates and locations at issue.

**4.** Defendants assert that plaintiff was responsible for trucking the container from Guangzhou to Huangpu, and reference the Freight Manifest for the shipment as evidence of this point. Plaintiff has not made clear whether it disputes this fact. Plaintiff responds that it is undisputed that Xiji drove the truck from Guangzhou to Huangpu (Pl's 56.1 Resp. ¶ 1.), and argues that the identity of the party that hired Xiji is not a material fact.

Once in defendants' control, the container was loaded onto the barge Change Yong, which left for Hong Kong on June 10. (Furman Decl. ¶ 4.) At Hong Kong on June 11 the container was transshipped to another barge, the Chang Tong, which delivered the container to the port of Shekou on June 12. (Furman Decl. ¶¶ 5, 6.) The container apparently waited at a terminal at Shekou, then was loaded onto the Zim Jamaica on June 15. (Furman Decl. ¶¶ 6, 7.) The Zim Jamaica thereafter left for Savannah, Georgia. At the port in Savannah, on or around July 17 and 18, the container was discharged from the Zim Jamaica and trucked by Panther Trucking to the Liberty Hardware facility in Greensboro, North Carolina, pursuant to the Zim Bill of Lading. (Def's 56.1 Resp. ¶ 7; Hirn Decl. ¶ 8, Ex. E.) The container remained defendants' responsibility until Liberty Hardware received it in Greensboro. (Hirn Decl. ¶ 6.) Upon receipt in Greensboro, the container was opened and its contents were found to be wet and damaged by freshwater, with rust forming. (Def's 56.1 Resp. ¶ 7.)

## II. *The Water*

Neither party offers direct proof of precisely when and how the cargo was exposed to and damaged by freshwater. No one saw, for example, the cargo left exposed on a rainy day. Rather, each side offers evidence that the cargo was not damaged while in its own control, and infers that the cargo must have been damaged while in the other party's control.

Plaintiff submits declarations of the warehouse manager, Najm, and trucker, Xiji, who observed and had control over the cargo when it was loaded into the container and delivered to defendants at Huangpu. Each declares that the cargo was dry and in good condition when loaded into the container. (Najm Decl. ¶ 3; Xiji Decl. ¶ 2.) Xiji further declares that it did not rain on June 7, the day the cargo was loaded in the container and driven to the port. (Xiji Decl. ¶ 5.) Plaintiff also submits weather data compiled by the United States Department of Commerce suggesting that it did not rain in the area of the cargo on June 7.[5] (Declaration of Edward Radzik, Ex. 3 ("Radzik Decl.").) All witnesses concur that once the cargo was loaded and the container sealed, the container appeared in good condition before and after its delivery to defendants at Huangpu. (Xiji Decl. ¶ 4; Furman Decl. ¶ 2; Transcript of Deposition of Yemini Simantov, at 11–12 ("Simantov Tr.").) Although it argues that precisely when the cargo was damaged is not a material fact, plaintiff offers weather data for the relevant area and time period suggesting that it rained on one or more days when the container was in defendants' possession

---

**5.** Plaintiff states in its moving papers that the weather data reflects the precipitation for the area in China where the cargo was stored. The Court notes that the location at which the weather data was observed is not readily apparent from plaintiff's submissions. Moreover, although plaintiff argues that the weather data constitutes proof in support of its motion and defendants offer no argument in response on this point, the Court makes no determination at this time as to the admissibility of plaintiff's weather data. Plaintiff cites to two cases in this District in which the Court admitted weather data as evidence. See *Arkwright Mutual Insurance Co. v. MV Oriental Fortune,* 745 F.Supp. 920 (S.D.N.Y. 1990); *Insurance Co. of North America v. SS Italica,* 567 F.Supp. 59 (S.D.N.Y.1983). Neither case causes this Court to make an admissibility determination as to plaintiff's weather data at this time. In *Arkwright,* the data came in the form of testimony of a meteorologist at a bench trial, 745 F.Supp. at 923, and in *SS Italica* the Court reserved judgment on the issue of admissibility of weather records until the conclusion of the bench trial, then made a more rigorous scrutiny of the admissibility of the records in a bench opinion. 567 F.Supp. at 60 n. 1.

but not yet loaded on the Zim Jamaica. (Radzik Decl. Ex. 3.) Plaintiff theorizes that the cargo was damaged by rain water flooding prior to being loaded on the Zim Jamaica, and submits that it rained on June 12 in the area of the container. (Radzik Decl. Ex. 3.)

Defendants submit declarations of their director of operations in the far east, Furman, of an investigator, Hirn, of a claims adjuster, Morris, and the deposition testimony of the captain of the Zim Jamaica, Simantov, each of whom opine about the possibility of the cargo getting wet at the ports or aboard the barges or Zim Jamaica. Furman declares that it is impossible for fresh water to accumulate on the Chang Yong and Chang Tong barges. (Furman Decl. ¶¶ 4, 5.) He also declares that there was no report of flooding on the terminal at Shekou. (Furman Decl. ¶ 6.) Simantov, at his deposition, explained the position in which the container was stowed on the Zim Jamaica. (Simantov Tr. at 8–9.) Simantov testified that the container was stowed at least nine feet above the bottom of the hold, and that he would know whether there was water in the hold because he could see the loading of the ship and the ship has alarms for such instances. (Simantov Tr. at 10.) Morris declares that as part of his investigation of the cargo in North Carolina he sealed himself in the container and observed no holes or defects that would allow water to enter the container. (Morris Decl. ¶ 4.) Defendants argue that precisely when the cargo was damaged is a material fact, and that this event did not happen while the cargo was in defendants' custody. Defendants do not theorize about when or how the cargo became damaged while in plaintiff's custody, but infer merely that this offers the only logical explanation of the condition of the cargo at outturn.

## Discussion

### I. *Summary Judgment Standard*

A moving party is entitled to summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Holt v. KMI–Continental Inc.,* 95 F.3d 123, 128 (2d Cir.1996). The substantive law underlying a claim determines if a fact is material and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When considering the motion, the Court's responsibility is not "to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 11 (2d Cir.1986).

In determining whether genuine issues of material fact exist, the Court must resolve all ambiguities and draw all justifiable inferences in favor of the nonmoving party. *See Anderson,* 477 U.S. at 255, 106 S.Ct. 2505; *Holt,* 95 F.3d at 129. The moving party bears the burden of demonstrating that no genuine issue of material fact exists. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Gallo v. Prudential Residential Serv. L.P.,* 22 F.3d 1219, 1223–24 (2d Cir.1994). "[T]he movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." *Goenaga v. March of Dimes Birth Defects Found.,* 51 F.3d 14, 18 (2d Cir.1995). Once the moving party discharges its burden of

demonstrating that no genuine issue of material fact exists, the burden shifts to the nonmoving party to offer specific evidence showing that a genuine issue for trial exists. *See Celotex,* 477 U.S. at 324, 106 S.Ct. 2548. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "A 'genuine' dispute over a material fact only arises if the evidence would allow a reasonable jury to return a verdict for the nonmoving party." *Dister v. Cont'l Group,* 859 F.2d 1108, 1114 (2d Cir.1988) (citing *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505).

"[T]he treatment of a summary judgment motion under COGSA is no different from the way similar motions are dealt with in any other litigation." *Transatlantic Marine Claims Agency, Inc. v. M/V OOCL Inspiration,* 137 F.3d 94, 101 (2d Cir.1998). "[I]f the defendant can show that plaintiff's prima facie case depends on resolution of disputed facts, then the court will set the matter for trial." *Id.* "On the other hand, if the defendant's evidence is so weak that it inflicts no meaningful damage to the plaintiff's prima facie case, the defendant will have judgment entered against it." *Id.*

## II. *Immaterial and Non-disputed Issues*

As an initial matter, the Court dispenses with several issues that either are immaterial for the purposes of plaintiff's motion or are not in dispute.

First, defendants argue that the Court must deny summary judgment because at least three disputed issues remain as to the amount of any potential damages in this case. Plaintiff, however, has moved for summary judgment only on the issue of liability. Issues about damages, therefore, are immaterial at this phase, and do not preclude summary judgment in plaintiff's favor.

Second, defendants argue that the declaration of Lao Xiji should be disregarded because it is arguably unsigned. Without the Xiji declaration, presumably disputed issues of material fact would remain as to the status of the cargo while it was loaded at Guangzhou and trucked to Huangpu. With its motion for summary judgment, plaintiff submitted the declaration of Lao Xiji, dated April 22, 2002. Beside Xiji's typewritten name at the bottom of the document is not Xiji's signature, but apparently a Chinese character "chop" or seal that does not refer to Xiji. (Declaration of Todd L. Platek, ¶ 3 ("Platek Decl.").) Plaintiff thereafter submitted a second declaration, dated July 26, 2002, signed by Xiji, that adopts the statements in the unsigned, April 22 declaration. (Declaration of Lao Xiji, attached to the Declaration of Edward C. Radzik as Exhibit 1.) Whether the first declaration should be disregarded because it is unsigned, therefore, is immaterial, because the supplemental declaration conforms with 28 U.S.C. § 1746, as it is signed by Xiji under penalty of perjury. *See id.; In re Adams,* 229 B.R. 312, 315–16 (Bankr. S.D.N.Y.1999). The Court finds that there is no genuine issue of material fact as to whether Xiji subscribed to the declaration.

Third, defendants assert that summary judgment is inappropriate because two other issues remain in dispute. Defendants characterize these issues in the form of questions, namely, "Whose trucker was it?" and "Where did the cargo get wet?" These questions, however, only preclude summary judgment if their answers are material according to the substantive law underlying the claim. *See Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. The Second Circuit has specifically denounced mere reference to "mysteries" and "questions

designed to cast doubt on plaintiff's prima facie case" in opposition to a motion for summary judgment under COGSA, when such references fail to raise a disputed issue of *material* fact. *See Transatlantic,* 137 F.3d at 101–02; *see also 1185 Avenue of the Americas Associates v. RTC,* 22 F.3d 494, 498 (2d Cir.1994) (granting summary judgment because non-movant merely "lists a series of unanswered factual questions"). Defendants' bare assertions in this case that summary judgment is precluded because factual issues remain in dispute therefore lack merit. The factual disputes highlighted by defendant must be material for the court to deny plaintiff's summary judgment motion. *Western World Insurance Co. v. Stack Oil, Inc.,* 922 F.2d 118, 121 (2d Cir.1990) ("The existence of disputed facts that are immaterial to the issues at hand is no impediment to summary judgment."). The Court thus rejects defendants' argument that summary judgment is inappropriate merely because any factual issues remain in dispute.

As the Court discusses below, defendants' sole challenge to plaintiff's motion under COGSA is that plaintiff fails to make out a prima facie case, because, defendants argue, plaintiff does not show that it delivered the cargo to defendants in good condition. The unanswered questions "Whose trucker was it?" and "Where did the cargo get wet?" must therefore be material to the issue of whether plaintiff delivered the cargo to defendants in good condition for the Court to deny plaintiff's motion for summary judgment.

III. *A Genuine Issue of Material Fact Remains*

A. *COGSA*

█ The parties agree that the Carriage of Goods by Sea Act ("COGSA"), 46 U.S.C. §§ 1300–1315, applies in this case. The Court determines liability under COGSA according to a burden-shifting procedure. First, plaintiff "establishes a prima facie case for recovery under COGSA by demonstrating that the goods were damaged while in the defendant-carrier's custody." *Bally, Inc. v. M.V. Zim America,* 22 F.3d 65, 68 (2d Cir.1994); *Caemint Food, Inc. v. Brasileiro,* 647 F.2d 347, 351–52 (2d Cir.1981) (Friendly, J.). Plaintiff can meet this burden by proving "(1) delivery of the goods to the carrier in good condition and (2) outturn by the carrier in damaged condition." *Bally, Inc.,* 22 F.3d at 69; *Caemint Food,* 647 F.2d at 352.

█ Ordinarily a clean bill of lading supports a prima facie case that plaintiff delivered goods to defendant in good condition. *See* 46 U.S.C. § 1303(4); *Caemint Food,* 647 F.2d at 352. When a shipper, however, "seeks to recover for damage to goods shipped in packages that would have prevented the carrier from observing the damaged condition had it existed when the goods were loaded," a clean bill does not support a prima facie case. *Caemint Food,* 647 F.2d at 352 (citing *The Niel Maersk,* 91 F.2d 932 (2d Cir.1937) (A. Hand, J.)); *see* 46 U.S.C. § 1303(3)(c); *Perugina Chocolates & Confections, Inc. v. S/S Ro Ro Genova,* 649 F.Supp. 1235, 1240–41 (S.D.N.Y.1986) (Leisure, J.). In such instances, the shipper "may still satisfy its burden by producing credible evidence that the contents of the packages were in fact in good condition when loaded." *Caemint Food,* 647 F.2d at 354; *Transatlantic,* 137 F.3d at 98 ("[P]laintiff may present direct evidence relating to the healthy condition of the goods at delivery and their damaged condition at outturn."). A shipper thus may satisfy its burden by, for example, submitting the testimony of one who observed the loading of the goods into a container, *see Bally, Inc.,* 22 F.3d at 69, or by showing "that the goods were prepared and packaged in accordance with proper procedures and were carried to the

ship under conditions that should have prevented any damage to the contents en route." *Caemint Food,* 647 F.2d at 354 n. 6.

█ Once plaintiff makes out a prima facie case that the goods were damaged while in defendant's custody, "the burden shifts to the carrier to show that the loss or damage falls within one of the COGSA exceptions set forth in 46 U.S.C. § 1304(2)." *Bally, Inc.,* 22 F.3d at 69 (internal quotations omitted). The last of these exceptions prevents a carrier from liability for any damage caused "without the fault or neglect of the agents or servants of the carrier." 46 U.S.C. § 1304(2)(q). The burden of proving that this exception applies rests with the carrier. *Id.*

### B. Plaintiff Does Not Make Out a Prima Facie Case

The parties dispute only the first of the two elements of plaintiff's burden to make out a prima facie case. Because the parties do not dispute the second element, that the goods arrived wet and damaged in Greensboro, North Carolina, at the moment when defendants returned the cargo to plaintiff's custody, the Court finds that there is no genuine issue of material fact as to whether the cargo was wet and damaged at outturn.

█ The pivotal issue before the Court on plaintiff's summary judgment motion is whether plaintiff satisfies the first element of its burden to establish a prima facie case, namely, whether plaintiff delivered the cargo to defendants in good condition. On this issue, defendants argue that: (1) the clean bill of lading does not support a prima facie case for plaintiff because defendants had no obligation to verify the condition of the cargo inside the container; (2) Lao Xiji's declaration does not establish

the condition of the cargo when delivered to defendants because the declaration is unsigned; and (3) plaintiff does not establish a prima facie case because where the cargo got wet remains unknown, in other words, the loss or damage was as likely to have occurred before delivery to the carrier as when the carrier actually had custody of the cargo. Plaintiff argues that (1) it does not rely on the clean bill of lading to establish its prima facie case, because the declarations of Nasm and Xiji are uncontroverted, and establish that defendants received the cargo in good condition; (2) Lao Xiji's supplemental declaration resolves the technical defect of the first declaration;[6] and (3) where the cargo got wet is not a material fact.

The Court agrees that the clean bill of lading does not establish plaintiff's prima facie case. The bill of lading states "Shipper's Load Stowage & Count Said to contain." (Hirn Decl. Ex. A.) Defendants assert that under shipping agreements like that it made with plaintiff, they only open a shipper's loaded and sealed container for an extraordinary reason, such as cargo or water leaking out of the container. (Hirn Decl. ¶ 4.) The language "Said to Contain" apparently reflects the statement of the shipper as to the contents of the container, but not that the carrier has inspected the contents. *See Transatlantic,* 137 F.3d at 97 n. 3. Plaintiff puts forth no evidence, and does not argue, that defendants had an obligation to check all of the cargo inside the container upon receipt at Huangpu. Plaintiff must, and does, rely on some other evidence that it delivered the goods to defendant in good condition to make out a prima facie case.

Only defendants' third argument remains, namely, that the Court must not grant summary judgment for plaintiff because precisely where the cargo got wet

---

6. The Court addresses this contention above. *See supra* Section II.

remains unknown. Ultimately, then, the question before the Court is whether defendants' circumstantial evidence that freshwater could not have wetted the cargo while in defendants' custody creates a factual dispute as to whether plaintiff delivered the cargo to defendants in good condition.

Under remarkably similar circumstances, with one notable difference, the Court found on summary judgment that plaintiff made out a prima facie case in *Transatlantic Marine v. M/V OOCL Inspiration*, 961 F.Supp. 55 (S.D.N.Y.1997). In *Transatlantic*, Judge Sweet found that plaintiff made out a prima facie case even though "Defendants may have raised an issue of fact as to precisely when and where the damage occurred." *Id.* at 59; *see also M.W. Zack Metal Co. v. S.S. Birmingham City*, 311 F.2d 334, 337 (2d Cir. 1962) (reiterating that the trial judge can dismiss plaintiff's case "even if the cause of the damage found at the point of ultimate destination may still remain in nubibus"). The Second Circuit affirmed and elaborated on defendants' unsuccessful attack on plaintiff's prima facie case. *Transatlantic*, 137 F.3d at 98–102 (Calabresi, J.). Judge Calabresi began by stating that "COGSA's framework ... places the risk of non-explanation for mysterious maritime damage squarely on defendants." *Id.* at 98. He then outlined three possible responses available to a defendant responding to a summary judgment motion under COGSA, the second of which is pertinent here.

> A second response would be to attack the plaintiff's evidence, and cast enough doubt on it to raise a genuine issue of material fact. For example, the defendant could raise questions about plaintiff's witnesses' credibility. Or it could argue that the nature of the damage to the goods was not peculiarly maritime. While, strictly speaking, this would not be "rebutting" the COGSA prima facie case with affirmative evidence showing that defendant fell under one of COGSA's specific exceptions, it is certainly a tactic that could, if enough of plaintiff's evidence were called into doubt, raise issues precluding summary judgment.

*Id.* at 100. Judge Calabresi noted that defendants in *Transatlantic* partly employed, unsuccessfully, this second response. Choosing this response, defendants "r[an] a heavy risk." *Id.* at 101.

Here, defendants have run the same heavy risk, attempting to cast doubt on plaintiff's direct evidence that it delivered the goods to defendants in good condition. Indeed, defendants' response would suffer the inadequacies outlined in *Transatlantic* by Judge Calabresi, but for the pivotal distinction that in this case freshwater damaged the cargo, whereas in *Transatlantic* seawater damaged the cargo. Evidence of freshwater wetting, unlike seawater wetting, of course does not justify a presumption that the damage occurred at sea. Freshwater wetting is not a uniquely maritime damage. *See id.* at 99–100. Thus, whereas defendants in *Transatlantic* merely cast "metaphysical doubt" on plaintiff's prima facie case, defendants here challenge whether plaintiff has produced *credible* evidence that the damage more likely than not was caused while defendants' held responsibility for the cargo. *See Matsushita*, 475 U.S. at 586, 106 S.Ct. 1348; *Caemint Food*, 647 F.2d at 354.[7]

Defendants argue that freshwater damage did not occur after plaintiff transferred the cargo to defendants at the port of Huangpu. To support this argument, defendants offer evidence about the low

7. Defendants' argument, however, assumes at least one of the "bizarre occurrences" that the Court dismissed in *Transatlantic*, namely, that if defendants are correct, then plaintiff paid to transport already damaged cargo.

probability of freshwater accumulating on either of the barges in China or in the hold of the Zim Jamaica. A reasonable jury could find that freshwater wetting was unlikely to occur while the cargo remained in defendants' custody, and infer that the damage more likely than not occurred while plaintiff held responsibility for the cargo. As plaintiff has offered the statements of Nasm and Xiji about the condition of the cargo before its receipt by defendants, defendants challenge by inference the credibility of these witnesses. *See Lendino v. Trans Union Credit Info Co.*, 970 F.2d 1110 (2d Cir.1992) (noting that summary judgment must not be granted when a "controversy regarding the inferences to be drawn from [evidentiary facts]" remains); *Fischl v. Armitage*, 128 F.3d 50, 55–56 (2d Cir.1997) (overturning the lower court's grant of summary judgment because it made credibility determinations). Although unsupported attacks on Nasm and Xiji's credibility perhaps would not overcome summary judgment, *see Celotex*, 477 U.S. at 324, 106 S.Ct. 2548 ("Once the moving party discharges his burden ... the burden shifts to the nonmoving party to offer specific evidence showing that a genuine issue for trial exists."); *see also Crawford–El v. Britton*, 523 U.S. 574, 600, 118 S.Ct. 1584; 140 L.Ed.2d 759 (1998) (holding that when defendant moves for summary judgment on a claim against an official under 42 U.S.C. § 1983, "plaintiff may not respond simply with general attacks upon the defendant's credibility, but rather must identify affirmative evidence"), defendants' attempt to support their attacks suffices at the summary judgment phase, particularly as Nasm and Xiji's credibility are crucial to plaintiff's prima facie case.[8] Resolving all ambiguities and drawing all justifiable inferences in defendants' favor, the Court finds that a genuine issue of material fact remains as to whether plaintiff delivered the cargo to defendants in good condition.

Defendants' position resembles that taken in *United States v. Louisville & Nashville Railroad Company*, 389 F.Supp. 250 (M.D.Ala.1975).[9] In *Louisville & Nashville*, not all of the cargo arrived at its final destination and the "evidence [was] silent as to what happened to the ... unaccounted for [cargo]." *Id.* at 251. Plaintiff submitted an affidavit of an employee of the shipper, stating that the proper amount of cargo was loaded into the car shipped by defendant railroad. *Id.* at 252. The affidavit corroborated the bill of lading, which also included the phrase "Shipper's load, count, and seal." *Id.* at 251. Without affirmative proof that the loss occurred while the cargo remained in plaintiff's custody, defendant nonetheless prevailed by showing that seals on the car were kept unbroken while the cargo remained under defendant's control. *Id.* Defendant essentially prevailed by showing that the "shortage [of cargo] could not have been caused by [it]." *Id.*

Here defendants likewise suggest that the damage could not have been caused while the cargo remained in their control. Thus, strangely, while an answer to the question "Where did the cargo get wet?" is not necessary for a determination of liability on summary judgment, and therefore is

---

**8.** Nasm and Xiji have submitted declarations in support of plaintiff's motion, but have not been deposed or otherwise subject to cross-examination. The Court makes no finding here as to either Nasm or Xiji's credibility, but notes that deposition testimony generally is more reliable than an affidavit. *See Hayes v. New York City Dept. of Corrections*, 84 F.3d 614, 619 (2d Cir.1996); *Perma Research & Development Co. v. Singer Co.*, 410 F.2d 572, 578 (2d Cir.1969).

**9.** A statutory scheme other than COGSA applied in *Louisville & Nashville*, but the court employed a burden-shifting analysis similar to that used under COGSA.

immaterial, such an answer would be sufficient for such a determination. Defendants assert that the answer to "Where did the cargo get wet?" is "not while it remained in defendants' control," and have submitted evidence to this end that creates a genuine issue of material fact as to whether plaintiff delivered the goods to defendant in good condition. Although defendants' argument fits poorly within COGSA's burden-shifting scheme, it responds to "the whole point of the prima facie requirements in COGSA . . . to establish that the damage to the goods occurred while under the supervision of the defendant." *Transatlantic,* 137 F.3d at 99. Defendants run a "heavy risk," but persuade the Court that a reasonable jury could find them not liable to plaintiff for the damaged cargo.

## Conclusion

For the reasons set forth above, the Court grants in part and denies in part plaintiff's motion for summary judgment on the issue of liability. The Court finds that the cargo was wet and damaged at outturn, as no genuine issue of material fact remains in dispute on the issue. The Court also finds that a genuine issue of material fact remains as to whether plaintiff delivered the cargo to defendants in good condition.

SO ORDERED.