**AMERICAN HOME ASSURANCE CO., a/s/o, Liberty Hardware Mfg. Co., Plaintiff,**

v.

**ZIM JAMAICA, her engines, boilers, etc., and Zim Israel Navigation Company, Ltd., Defendants.**

No. 01 CIV, 2854(PKL).

United States District Court, S.D. New York.

March 2, 2006.

Donovan Parry McDermott & Radzik, New York, New York, Edward C. Radzik, for Plaintiff.

De Orchis, Walker & Corsa, LLP, New York, New York, John A. Orzel, for Defendants.

### OPINION AND ORDER

LEISURE, District Judge.

Plaintiff American Home Assurance Co., the subrogated marine cargo insurer of Liberty Hardware Mfg. Co., brings this action, pursuant to the Carriage of Goods by Sea Act (COGSA), 46 U.S.C. app. §§ 1300–15 (2000), against defendants m/v Zim Jamaica, her engines, boilers, etc., and Zim Israel Navigation Company, Ltd., for damage to a shipment of hardware fixtures. Plaintiff previously moved for summary judgment, pursuant to Federal Rule of Civil Procedure 56, on the issue of de-

fendants' liability. In an Opinion and Order dated December 24, 2003, the Court granted in part, and denied in part, plaintiff's motion, holding as a matter of law that no genuine issue of material fact existed as to whether the cargo was damaged at outturn, and that a genuine issue of material fact existed as to whether the cargo was delivered to defendants in good condition. Plaintiff now renews its summary judgment motion on this latter question. For the reasons set forth below, the disposition of this motion is stayed pending a sixty-day continuance for the sole purpose of deposing Lao Xiji.

### Background

I. *Factual Background*

Plaintiff is the insurer of Liberty Hardware Mfg. Co. ("Liberty"), the consignee of a shipment of hardware fixtures (the "Cargo") found damaged upon receipt in Greensboro, North Carolina. (Pl.'s 56.1 ¶ 1; Compl. ¶ 8; Thomas Decl. ¶ 3.) Pursuant to its open cargo insurance policy with Liberty (the "Policy"), plaintiff indemnified Liberty in the amount of $93,326.67 for the damage to the Cargo. (Pl.'s 56.1 ¶ 1; Thomas Decl. ¶ 5.) Pursuant to the Policy, plaintiff is subrogated to any and all rights of recovery that Liberty has against defendants m/v Zim Jamaica, her engines, boilers, etc., and Zim Israel Navigation Company, Ltd. ("Zim Israel"), the common carrier of the cargo and the carrier's vessel. (Thomas Decl. Ex. 1.) Consequently, plaintiff has brought this action, pursuant to COGSA, against defendants for sums paid to Liberty under the Policy. (Pl.'s 56.1 ¶ 1; Thomas Decl. ¶ 5.)

The Cargo began its journey on June 7, 2000 in Guangzhou, China. (Xiji Decl. ¶ 1.) Globe Express Services ("Globe"), the shipper[1] of the Cargo, received at its

1. A "shipper" is defined as "[o]ne who tenders goods to a carrier for transportation." Black's Law Dictionary 1383 (7th ed.1999).

warehouse in Guangzhou several shipments of hardware from various Chinese manufacturers. (Najm Decl. ¶ 2.) Those shipments, which were consolidated by Globe into one container, constitute the Cargo. (Najm Decl. ¶ 2; Xiji Decl. ¶ 2.) Defendants were obligated to provide the shipping container to Globe (Hirn Decl. ¶ 4); however, defendants only made the container available at the port of Huangpu, a port about forty miles away from Globe's warehouse. As such, Globe hired a truck driver to deliver the empty shipping container from Huangpu to its warehouse in Guangzhou.[2] (Chan Decl. ¶ 4.)

Lao Xiji, the truck driver hired by Globe, picked up the forty-foot-tall empty shipping container from the Port of Huangpu, where he inspected the container and found it to be in good condition.[3] (Xiji Decl. ¶ 1.) Mr. Xiji was given a seal to affix to the container after it was loaded in Guangzhou. (Xiji Decl. ¶ 1.) Mr. Xiji then drove the container to Globe's warehouse in Guangzhou. (Xiji Decl. ¶ 1.)

The loading of the Cargo into the container at Globe's warehouse (Najm Decl. ¶ 2; Xiji Decl. ¶ 2) was overseen by Asaam Najm, a Globe manager (Xiji Decl. ¶ 2). At the time of loading, Mr. Najm noted that the Cargo's contents were in good condition and corresponded to the packing list. (Najm Decl. ¶ 3.) The container was then closed and sealed.[4] (Najm Decl. ¶ 4; Xiji Decl. ¶ 3.)

Because Globe had contracted with defendants to carry the Cargo on a "CY/CY," or "container yard to container yard," basis (Hirn Decl. ¶ 4) from the port of Huangpu, China to the port of Savannah, Georgia (Hirn Decl. ¶ 6), it was Globe's responsibility to transport the Cargo from its warehouse in Guangzhou to the port of Huangpu (Xiji Decl. ¶ 4). Accordingly, Mr. Xiji, the driver hired by Globe, drove the Cargo to Huangpu, where port personnel inspected the container and confirmed that the seal applied to the container had the same number as the seal provided to Mr. Xiji when he originally picked up the container. (Xiji Decl. ¶ 4.) Mr. Xiji has declared that the loaded and sealed container was in good condition when he delivered it to the port, and that the weather conditions at the time were hot and dry with no rain. (Xiji Decl. ¶ 5.) Defendants do not, as a matter of course, open any loaded and sealed containers provided to them for carriage unless there is an extraordinary reason to do so, such as the existence of an open and obvious defect like leaking water. (Hirn Decl. ¶ 4.) Defendants have no record of any open and obvious defects in the container housing the Cargo. (Hirn Decl. ¶ 4.) Consequently, the container housing the Cargo was not opened. (Chan Decl. ¶ 5.)

The container was loaded onto the feeder barge CHANG YONG for carriage to Hong Kong. (Furman Decl. ¶¶ 2–4.) The bill of lading governing the shipment was issued by defendants and stamped "Shipper's Load Stowage and Count—Said to Contain." (Chan Decl. ¶ 5.)

---

**2.** While Mr. Najm states in his declaration that defendants had hired the truck driver to deliver the Cargo to Huangpu, plaintiff admits in its reply brief that "[d]efendant was not responsible for the truck carriage from Gangzhou to the port in Huangpu." (Pl.'s Reply Mem. Law Supp. Mot. 2 n. 1.)

**3.** Mr. Xiji states that the "keeper" at the port also inspected the container and found it to be in good condition. (Xiji Decl. ¶ 1.)

**4.** Mr. Najm's and Mr. Xiji's declarations differ as to who locked the container and applied the seal. Mr. Xiji's declaration states that he gave Mr. Najm the seal and then watched Mr. Najm lock the container and apply the seal. (Xiji Decl. ¶ 3.) Mr. Najm's declaration states that Mr. Xiji closed and sealed the container under Mr. Najm's "direct supervision." (Najm Decl. ¶ 4.) Mr. Xiji claims that both he and Mr. Najm confirmed the seal number as # 124683. (Xiji Decl. ¶ 4.)

The CHANG YONG departed Huangpu on June 10, 2000 (Furman Decl. ¶ 4) and arrived in Hong Kong on June 11, 2000 (Furman Decl. ¶ 5). In Hong Kong, the container was transferred to the barge CHANG TONG, which carried the container to the port of Shekou, arriving on June 12, 2000. (Furman Decl. ¶ 6.) At the port of Shekou, the container was loaded onto the M/V Zim Jamaica on June 15, 2000, for carriage to the United States. (Furman Decl. ¶ 7.)

Pursuant to the governing bill of lading and the freight manifest, Globe contracted with defendants for the latter to arrange for the trucking of the Cargo from the port of Savannah to its final destination in Greensboro, North Carolina.[5] (Hirn Decl. ¶ 6, Ex. A, Ex. C.) Accordingly, defendants hired Panther International (Hirn Decl. ¶ 8), who picked up the Cargo in Savannah and then drove it to Liberty's facility in Greensboro (Thomas Decl. ¶ 3). Liberty received the shipping container on July 19, 2000. (Thomas Decl. ¶ 2.) When the container was opened, Liberty found that its contents were wet and damaged (Thomas Decl. ¶ 3), with a visible waterline of approximately eighteen to twenty inches (Thomas Decl. ¶ 4). As a result, most of the affected boxes were either damp or soaking wet, and the actual hardware contained therein was damaged and beginning to rust. (Thomas Decl. ¶ 4.)

## II. *The Parties' Contentions Regarding Damage to the Cargo*

The Court previously held, and the parties do not contest on this motion,[6] that no genuine issue of material fact existed as to whether the Cargo was damaged at outturn, *i.e.,* upon its arrival in Greensboro, North Carolina. *Am. Home Assurance Co. v. ZIM JAMAICA,* 296 F.Supp.2d 494, 501 (S.D.N.Y.2003) (Leisure, J.). The Court went on to hold, however, that a genuine issue of material fact existed as to whether the Cargo was in good condition when defendants assumed its custody in Huangpu.[7] *Id.* at 504. Here, the parties both contest that the Cargo was exposed to, and damaged by, freshwater while in the other's custody. (*E.g.,* Pl.'s Mem. Law Supp. Mot. 4.) The parties' specific contentions follow.[8]

---

5. Absent an agreement in these documents calling for additional trucking, a shipment made on a container yard to container yard basis only obligates the carrier to deliver the goods to the final port of destination, where it is unloaded by the shipper or consignee. (Hirn Decl. ¶ 4.)

6. Defendants concede in their moving papers that the only issue before the Court on this motion is whether the Cargo was given to defendants in good condition. (Def.'s Mem. Law Supp. Mot. 2.)

7. As seen below in *infra* Discussion Part II.A, this finding required the Court to deny summary judgment because plaintiff's proof of delivery of cargo to a carrier in good condition is a required element of a claim for damaged goods under COGSA.

8. The parties' assertions are drawn from the statements they filed in accordance with Rule 56.1 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York. Rule 56.1 requires a party moving for summary judgment to submit to the Court, in addition to its other papers, a separate document listing those material facts for which it contends there is no genuine issue to be tried. S.D. & E.D. N.Y. R. 56.1(a). It further requires a defendant to submit a corresponding document responding to each of plaintiff's contentions, and also setting forth any additional facts for which defendant contends there is a genuine issue to be tried. *Id.* at (b). A plaintiff's failure to submit its statement is grounds for denial of the motion, *id.* at (a); a defendant's failure to specifically controvert a plaintiff's undisputed material fact results in that fact being treated as admitted for the purpose of deciding the motion, *id.* at (c). This Court has recently discussed at length the effect of a litigant's failure to comply with Rule 56.1's requirements. *Derienzo v. Metro. Transp. Auth.,* 404 F.Supp.2d 555, 557–60 (S.D.N.Y.2005) (Leisure, J.).

## A. Plaintiff's Assertions of Undisputed Material Facts

### 1. Chain of Custody

Plaintiff maintains that there is no dispute as to the following chain of custody of the Cargo: Mr. Xiji drove the empty shipping container to Guangzhou, where it was inspected and found to be in good condition (Pl.'s 56.1 ¶ 3); both Mr. Najm and Mr. Xiji viewed and confirmed that the Cargo was in good condition when loaded into the container at Guangzhou (Pl.'s 56.1 ¶ 4); the loaded container was then locked and sealed at Guangzhou (Pl.'s 56.1 ¶ 4); Mr. Xiji drove the container to Huangpu, during which time neither the Cargo nor the container was damaged (Pl.'s 56.1 ¶ 5); and the container arrived at Huangpu on June 7 (Pl.'s 56.1 ¶ 6), where port personnel accepted the container in good condition (Pl.'s 56.1 ¶ 5).

### 2. Rain

Plaintiff contends that there was no report of rain in Hong Kong on June 7, 2001. (Pl.'s 56.1 ¶ 6.) Between June 8, 2001 and June 17, 2001, the alleged date on which the container was finally loaded onto the Zim Jamaica, it rained in the "region of the container terminal," with a downfall of 3.15 inches of rain on June 12, 2000. (Pl.'s 56.1 ¶ 6.) Because the Cargo was undamaged up until, and through, June 7, and because the Cargo was in defendants' custody as of June 8, 2000 (Pl.'s 56.1 ¶ 8; Def.'s 56.1 ¶ 8), plaintiff contends that the Cargo could only have been exposed to freshwater while in defendants' custody.

## B. Defendants' Asserted Disputed Issues of Material Facts

Defendants contend generally that there are disputed issues of material fact as to whether the cargo was damaged by the time it reached the port of Huangpu. (Def.'s 56.1 ¶ 5.) They first contend that the cargo was delivered to Huangpu on June 8, and not June 7. (Def.'s 56.1 ¶ 65; Furman Decl. ¶ 2.) In support of this contention, defendants point to a discrepancy among Mr. Xiji's declaration, Mr. Najm's declaration and deposition, and the declaration of U. Furman, the Director of Operations of Zim Israel Navigation Co., Ltd. Far East.[9] (Def.'s 56.1 ¶ 5; Furman Decl. ¶ 2.) While Mr. Xiji has declared that he delivered the Cargo to Huangpu on June 7, 2000 (Xiji Decl. ¶ 2), Mr. Najm only declared that it was delivered in June 2000

---

9. The paragraph in defendants' Rule 56.1 counterstatement cites to both Mr. Furman's declaration and the declaration of Kent Chan, the manager of Zim Israel's agency office in Guangzhou. Mr. Chan's declaration states that documents in his file indicate that the Cargo was delivered to Huangpu on June 8, 2000. (Chan Decl. ¶ 4.) While the Court makes no determination as to whether this statement in Mr. Chan's declaration would be admissible at trial, the Court notes that a district court's review of evidence in support of a Rule 56(f) motion is considerably more lax than when reviewing a summary judgment motion on the merits, cf. Fed.R.Civ.P. 56(e) ("Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."), such that a party invoking Rule 56(f) is not required to present evidence that would be admissible at trial, Carney v. U.S. Dept. of Justice, 19 F.3d 807, 813 (2d Cir.1994) ("[I]n support of his Rule 56(f) affidavit, he was not required to present evidence that would be admissible at a trial, ... but something more than his bare allegations is needed.") (citation omitted); Four Star Capital Corp. v. Nynex Corp., 183 F.R.D. 91, 99 (S.D.N.Y.1997) ("[P]laintiff need not present evidence that would be admissible at trial to support a motion for abeyance.") (emphasis omitted). The Court need not rely on Mr. Chan's declaration in any regard, though, as Mr. Furman's declaration, which is made on personal knowledge, and states that the Cargo was received on June 8, 2000 (Furman Decl. ¶ 2), suffices.

(Najm Decl. ¶ 2), and then stated in his deposition that he was unsure of the date of delivery (Najm Dep. at 21). Mr. Furman declared that the Cargo was delivered on June 8, 2000. (Furman Decl. ¶ 2.) These discrepancies, defendants argue, evidence a dispute as to the location of the Cargo between June 7 and June 8.

Defendants also dispute plaintiff's contentions regarding when and where it rained during the relevant time period. They argue that plaintiff's factual assertions on this issue are faulty because they rely on weather records from Hong Kong (Def.'s 56.1 ¶¶ 6–7; Raguso Aff. ¶ 3), which is eighty-three nautical miles from Guangzhou (Orzel Decl. ¶ 11).[10] Therefore, given the distance between the cities, any reliance on weather reports for Hong Kong is misplaced because the weather in Hong Kong and Guangzhou could differ significantly at any given time.[11]

In sum, defendants argue that, because there is evidence supportive of a dispute as to where the Cargo was between June 7 and June 8 (Def.'s 56.1 ¶ 6), and because they have proffered evidence disputing plaintiff's contention that there was no rain on June 7, 2000 (Def.'s 56.1 ¶¶ 6–7), *i.e.*, the final day of plaintiff's custody over the Cargo, there is a genuine issue of material fact precluding summary judgment.

## Discussion

### I. Summary Judgment Standards

A district court is required to grant summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). The party seeking summary judgment maintains the burden of demonstrating that no genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (Kearse, J.). Because summary judgment is a drastic device, the movant's burden is a heavy one. *Nationwide Life Ins. Co. v. Bankers Leasing Ass'n, Inc.*, 182 F.3d 157, 160 (2d Cir.1999) ("We have long recognized that summary judgment is a 'drastic device, since its prophylactic function, when exercised, cuts off a party's right to present his case to the jury.' Accordingly, the moving party bears a heavy burden of demonstrating the absence of any material issues of fact." (quoting *Heyman v. Commerce & Indus. Ins. Co.*, 524 F.2d 1317, 1320 (2d Cir.1975) (Kaufman, C.J.))).

Once the moving party has discharged its initial burden, the nonmoving party is obligated to come forward with evidence sufficient to support a verdict in his or her favor. *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995). The question whether a nonmoving party discharges its burden frequently turns on the authenticity of the alleged dispute, and the materiality of the fact(s) being disputed: "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*

---

10. Plaintiff argues that defendants' printout from a website that evidences the distance between Hong Kong and Guangzhou (Orzel Stmt. Ex. 9) is hearsay (Pl.'s Reply Mem. Law. Supp. Mot. 4–5). Again, while the Court does not address the eventual admissibility of this, or any other printout, such printouts are properly considered by the Court for the purpose of this Rule 56(f) analysis because they constitute something more than bare allegations. *See Carney*, 19 F.3d at 813.

11. Defendants also deny that 3.15 inches of rain fell on June 12, 2000. (Def.'s 56.1 ¶ 6.)

*v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Miner v. City of Glens Falls,* 999 F.2d 655, 661 (2d Cir.1993) (" 'In considering the motion, the court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried . . . .' " (quoting *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 11 (2d Cir. 1986))). Mere conjecture or surmise by the nonmovant in support of his or her case is inadequate. *Goenaga,* 51 F.3d at 18.

Whether a fact is material is determined by looking at the applicable substantive law. *Anderson,* 477 U.S. at 254, 106 S.Ct. 2505 ("[I]n ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden."). Further, unsupported allegations of a material issue of fact are inadequate. *Weinstock v. Columbia Univ.,* 224 F.3d 33, 41 (2d Cir. 2000). Because the reviewing court is required to go beyond the allegations of the pleadings in search of facts, at the summary judgment stage the time has come for the movant "to put up or shut up." *Id.* (quoting Fleming James, Jr. & Geoffrey C. Hazard, Jr., *Civil Procedure* 150 (2d ed.1977)).

In determining whether the dispute over a material fact is genuine, a court must accept as true the nonmovant's allegations, and draw all reasonable inferences from such allegations in the nonmovant's favor. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505; *Thompson v. Gjivoje,* 896 F.2d 716, 720 (2d Cir.1990) ("All reasonable inferences and any ambiguities are drawn in favor of the nonmoving party."). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ." *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505; *Chambers v. TRM Copy Ctrs. Corp.,* 43 F.3d 29, 36–37 (2d Cir.1994) (Kearse, J.); *Rattner v. Netburn,* 930 F.2d 204, 209 (2d Cir.1991) (Kearse, J.) ("The function of the district court in considering the motion for summary judgment is not to resolve disputed issues of fact but only to determine whether there is a genuine issue to be tried."). If, from the evidence in the record, a reasonable inference can be drawn in favor of the nonmovant, the summary judgment motion shall fail. *Rattner,* 930 F.2d at 209 ("If, with respect to a material fact as to which the moving party contends there is no dispute, there is evidence in the record from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper.").

Finally, "the treatment of a summary judgment motion under COGSA is no different from the way similar motions are dealt with in any other litigation." *Transatlantic Marine Claims Agency, Inc. v. M/V "OOCL Inspiration,"* 137 F.3d 94, 101 (2d Cir.1998). "As a result, a district court sitting in admiralty will, as courts regularly do, simply determine the existence of genuine issues of material fact." *Id.*

## II. *Prima Facie Case Under COGSA*

The parties do not contest that the Carriage of Goods by Sea Act (COGSA), 46 U.S.C. app. §§ 1300–15 (2000), governs this action. COGSA requires a carrier to "properly and carefully load, handle, stow, carry, keep, care for, and discharge the goods carried." *Id.* app. § 1303(2).

### A. *Plaintiff's Burden of Proof and Persuasion*

 A plaintiff shipper bears the burden of persuasion, which it maintains throughout its case, of demonstrating that the cargo was damaged while in the defendant carrier's custody. *Atl. Mut. Ins. Co. v. CSX Lines, L.L.C.,* 432 F.3d 428, 433 (2d Cir.2005) ("[T]he 'plaintiff has the burden, which remains with it throughout the case,

of proving that 'the goods were damaged while in the carrier's custody.'"" (quoting *Caemint Food, Inc. v. Brasileiro,* 647 F.2d 347, 351–52 (2d Cir.1981) (Friendly, J.))). A prima facie case for loss of, or damage to, goods is made by demonstrating "'delivery of the goods to the carrier in good condition, and outturn by the carrier in damaged condition.'" *Caemint Food, Inc.,* 647 F.2d at 352 (quoting *Vana Trading Co. v. S.S. "Mette Skou,"* 556 F.2d 100, 104 (2d Cir.1977)); *see also Transatlantic,* 137 F.3d at 98 ("[A] shipper 'who wishes to recover against the carrier for damage to goods bears the initial burden of proving both delivery of goods to the carrier ... in good condition, and outturn by the carrier ... in good condition.'" (quoting *Vana Trading Co.,* 556 F.2d at 104 (ellipses in original))). A plaintiff shipper or consignee need not prove that the carrier was at fault, or demonstrate how exactly the damage occurred; its only obligation is to demonstrate that the damage occurred while the cargo was in the carrier's custody. *M. Golodetz Exp. Corp. v. S/S Lake Anja,* 751 F.2d 1103, 1109 (2d Cir.1985) (Kaufman, J.). This furthers COGSA's clear intent to "place[ ] the risk of non-explanation for mysterious damage squarely on defendants." *Transatlantic,* 137 F.3d at 98. The Second Circuit has stated that there are two general ways by which a plaintiff can make out its prima facie case under COGSA. *Id.*

### 1. Direct Evidence of Liability

■ The first way a plaintiff can make out its prima facie case is by presenting direct evidence of the good condition of the cargo at delivery and its damaged condition at outturn. *Id.* The presentation of a clean bill of lading normally serves as direct prima facie proof of the delivery of goods to the carrier in good condition. 46 U.S.C. app. § 1303(4) (2000); *Caemint Food, Inc.,* 647 F.2d at 352. However, a

clean bill of lading lacks the same probative force where, as here, the damage is to cargo shipped in a shipping container which prevented the defendant carrier from viewing the damaged condition of the goods had it existed at the time the goods were loaded. *Caemint Food, Inc.,* 647 F.2d at 353 ("'[W]here because of the perishable or intrinsic nature of the commodity, the internal condition is not adequately revealed by external appearances, cargo may have a considerable burden of going further to prove actual condition.'" (quoting *Compagnie De Navigation Fraissinet & Cyprien Fabre, S.A. v. Mondial United Corp.,* 316 F.2d 163, 170 (5th Cir. 1963))); *see also The Niel Maersk,* 91 F.2d 932, 933 (2d Cir.1937) (A.Hand, J.) ("The recitals of 'apparent good order and condition' in the bills of lading furnished only prima facie proof of the external condition of the bags. But their external condition would not show whether the contents were potentially [damaged]....").

Absent a clean bill of lading, or in a case such as this one where the goods themselves were not viewable upon delivery, a plaintiff may present other forms of direct evidence. For example, a plaintiff can present the testimony of an individual who observed the loading of the cargo into its shipping container while in good condition. *See, e.g., Bally, Inc. v. M.V. Zim Am.,* 22 F.3d 65, 69 (2d Cir.1994) (finding as adequate evidence of the weight of the cargo an individual's testimony that he "observed 301 cartons loaded into the container prior to sealing, and the number of cartons loaded into the container was correlated with the weight of the cargo through the manufacturers' invoices and packing lists"). Or, as stated by Judge Friendly in *Caemint Food, Inc.,* a plaintiff can offer direct evidence that "the goods were prepared and packaged in accordance with proper procedures and were carried to the ship under conditions that should have prevented any

damage to the contents en route." 647 F.2d at 354 n. 6.

### 2. The Nature of the Damage Evidences Carrier Liability

█ The second way a plaintiff may make out its prima facie case is to "show that the characteristics of the damage suffered by the goods justify the conclusion that the harm occurred while the goods were in the defendant's custody." *Transatlantic Marine Claims Agency, Inc. v. M/V "OOCL Inspiration,"* 137 F.3d 94, 98 (2d Cir.1998). The Second Circuit has stated that

> "the consignee's burden does not mean that it must always introduce direct evidence that the cargo was in good condition when shipped. It may additionally meet its burden by showing, as was also done here, *from the condition of the cargo as delivered or otherwise, that the damage was caused by the carrier's negligence and not by any inherent vice in the cargo.*"

*Id.* at 99 (quoting *Vana Trading Co., Inc. v. S.S. "Mette Skou,"* 556 F.2d 100, 105 (2d Cir.1977)); *Caemint Food, Inc.,* 647 F.2d at 355 ("A shipper or consignee who has not proved delivery in good condition may nevertheless establish a *prima facie* case for recovery by producing sufficient evidence that the nature of the damage suffered indicates that the damage occurred while the cargo was in the carrier's custody."); *Perugina Chocolates v. S/S Ro Ro Genova,* 649 F.Supp. 1235 (S.D.N.Y.1986) (Leisure, J.) (citing *Caemint* with approval).

### B. Defendant's Burden

Once a plaintiff makes out its prima facie case, the burden of proof shifts to the defendant, who may rebut plaintiff's prima facie case by showing that one of seventeen statutory exceptions to liability exists.[12] 46 U.S.C. app. § 1304(2) (2000); *Atl. Mut. Ins. Co. v. CSX Lines, L.L.C.,* 432 F.3d 428, 433 (2d Cir.2005) ("It is only once the plaintiff establishes a prima facie case that the burden shifts to the defendant to prove that one of the statutory COGSA exceptions to liability applies."); *Transatlantic,* 137 F.3d at 98; *see also Lekas & Drivas, Inc. v. Goulandris,* 306 F.2d 426 (2d Cir.1962) (Friendly, J.) (holding that once plaintiff makes out its prima facie case, "the burden then falls upon the carrier to bring itself within an excepted cause or to prove it exercised due diligence to avoid and prevent the harm"). The final statutory exception, the so-called "(q)" exception, is a catch-all provision which relieves a carrier from liability where the cause of damage arises "without the actual fault and privity of the carrier and without the fault or neglect of the agents or servants of the carrier." 46 U.S.C. app. § 1304(2); *M. Golodetz Export Corp. v. S/S Lake Anja,* 751 F.2d 1103 (2d Cir.1985) (Kaufman, J.). Where a carrier invokes the (q) exception, the burden of proof does not return to the shipper, and, as a result, the carrier must show that it was free of any fault in order to prevail. *Id. See generally* Thomas J. Schoenbaum, *Admiralty and Maritime Law* § 8–25, at 607 (4th ed.2004). If defendant meets its burden, the burden shifts again,[13] and "plaintiff may still prevail by showing exceptions to the exceptions—for example

---

**12.** These exceptions include, *inter alia,* assertions that the damages stem from acts of God, 46 U.S.C. app. § 1304(2)(d) (2000), acts of war, *id.* at (e), insufficiency of packing, *id.* at (n), and latent defects not discoverable by due diligence, *id.* at (p).

**13.** The frequency of burden shifting under COGSA has not gone unnoticed: The Eleventh Circuit has stated that the burden of proof "shifts more frequently than the wind on a stormy sea." *Banana Servs., Inc. v. M/V Fleetwave,* 911 F.2d 519, 521 (11th Cir.1990).

'concurrent causes' for loss." *Transatlantic*, 137 F.3d at 98 n. 6.

The Second Circuit has addressed the ways in which a defendant can adequately "rebut" a plaintiff's prima facie case in the context of summary judgment. *Id.* at 100–01. In addition to submitting evidence of the applicability of one of the statutory exceptions discussed above, a defendant can, alternatively, do nothing at all, and simply assert that plaintiff has failed to meet its burden of making out a prima facie case, or defendant can attack plaintiff's evidence to such a degree as to cast enough doubt on the evidence to raise a genuine issue of material fact. *Id.* at 100.

In lieu of turning to the merits of plaintiff's motion under the case law, the Court turns to address defendants' argument that the motion should be denied pursuant to Rule 56(f) of the Federal Rules of Civil Procedure because defendants require additional discovery in order to be able to oppose effectively plaintiff's motion.

### III. *Defendants' Argument for Denial of the Motion Pursuant to Federal Rule of Civil Procedure 56(f)*

Federal Rule of Civil Procedure 56(f) provides that where a party opposing a motion for summary judgment cannot, for reasons stated, present by affidavit essential facts in support of its opposition to the motion, a district court may deny the motion or order a continuance in order to allow additional discovery, including additional depositions, to be had. Fed.R.Civ.P. 56(f). Defendants invoke Rule 56(f) in order to request additional time to depose Mr. Xiji, the driver of the empty shipping container between Huangpu and Guangzhou, and between Guangzhou and Huangpu when filled with the Cargo. Defendants sought to depose Mr. Xiji in May 2004, but were told by plaintiff that Mr. Xiji's whereabouts are unknown, as he no longer works for his former employer and

cannot otherwise be found. Before turning to defendants' specific contentions, the Court first reviews the Second Circuit's Rule 56(f) jurisprudence.

#### A. *Rule 56(f) Standards*

The Second Circuit has a well-established four-step requirement that a non-movant must satisfy in order to gain additional discovery under Rule 56(f):

> [A] party resisting summary judgment on the ground that it needs discovery in order to defeat the motion must submit an affidavit showing "(1) what facts are sought [to resist the motion] and how they are to be obtained, (2) how those facts are reasonably expected to create a genuine issue of material fact, (3) what effort affiant has made to obtain them, and (4) why the affiant was unsuccessful in those efforts."

*Gurary v. Winehouse*, 190 F.3d 37, 43 (2d Cir.1999) (quoting *Meloff v. N.Y. Life Ins. Co.*, 51 F.3d 372, 375 (2d Cir.1995)); *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1138 (2d Cir.1994) (same); *Cubby, Inc. v. CompuServe Inc.*, 776 F.Supp. 135, 143 (S.D.N.Y.1991) (Leisure, J.) (same). A party's failure to submit an affidavit is a proper ground for denial of the request. *See Di Benedetto v. Pan Am World Serv., Inc.*, 359 F.3d 627, 630 (2d Cir.2004) (" '[T]he failure to file an affidavit under Rule 56(f) is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.' " (quoting *Paddington Partners*, 34 F.3d at 1137)). Requests made in filings other than an affidavit also constitute a proper basis for denial. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Stroh Cos.*, 265 F.3d 97, 117 (2d Cir.2001) (affirming district court's decision to deny a Rule 56(f) request on the ground that the requesting party made its request in its opposition papers to a summary judgment motion); *210 E. 86th St.*

*Corp. v. Combustion Eng'g, Inc.*, 821 F.Supp. 125, 144 (S.D.N.Y.1993) ("It is well-established that the failure to file a Rule 56(f) affidavit is by itself a sufficient basis to reject a claim that the opportunity for discovery was inadequate, and that '[a] memorandum is not a substitute for an affidavit under Rule 56(f).'" (quoting *Burlington Coat Factory Warehouse Corp. v. Esprit de Corp.*, 769 F.2d 919, 926 (2d Cir.1985) (bracket in original))).

### 1. *What Facts Are Sought and How Will They Be Obtained?*

The requirement that a party identify *what* facts are sought and *how* they are to be obtained precludes the party from making purely speculative requests with the hope that beneficial evidence will serendipitously materialize. *Nat'l Union*, 265 F.3d at 117 ("[A] district court may refuse to allow additional discovery 'if it deems the request to be based on speculation as to what potentially could be discovered.'" (quoting *Paddington Partners*, 34 F.3d at 1138)). Nor is a party entitled to additional discovery where it is requested based on conclusory allegations that the affidavits used by the opposing party in support of its summary judgment motion are not credible, *Ying Jing Gan v. City of N.Y.*, 996 F.2d 522, 532 (2d Cir.1993) (Kearse, J.) (stating that a party seeking additional discovery "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible"), or where a bare allegation is made that the evidence sought is under the opposing party's control, *210 E. 86th St. Corp.*, 821 F.Supp. at 144 ("'A 'bare assertion' that the evidence supporting a plaintiff's allegation is in the hands of the defendant is insufficient to justify a denial of a motion for summary judgment under Rule 56(f).'" (quoting *Contemporary Mission, Inc. v. U.S. Postal Serv.*, 648 F.2d 97, 107 (2d Cir.1981))).

A court must also consider whether the party seeking additional discovery has identified those material facts that are likely to be disclosed during the additional discovery. *Id.* (" '[P]laintiffs must identify specific issues of material fact which are *likely* to be disclosed if they are granted a reasonable opportunity to pursue the additional discovery they seek.'" (quoting *Contemporary Mission, Inc. v. N.Y. Times Co.*, 665 F.Supp. 248, 269 (S.D.N.Y.1987), *aff'd*, 842 F.2d 612 (2d Cir.1988))). This consideration is sound because Rule 56(f) is designed to facilitate a party's ability to discover evidence supportive of a claim that has already been established, and not to facilitate the discovery of evidence that might establish a new and additional claim. *Paddington Partners*, 34 F.3d at 1138; *see also id.* ("Such divagation is decidedly not the object of the discovery procedures outlined in the Federal Rules of Civil Procedure.").

### 2. *How Are the Facts Reasonably Expected to Raise a Genuine Issue of Material Fact?*

The second requirement is that the requesting party demonstrate how the discovery sought is material to its ability to defeat summary judgment. *Sage Realty Corp. v. Ins. Co. of N. Am.*, 34 F.3d 124, 128 (2d Cir.1994) ("Additionally, the discovery sought must be material to the opposition of the summary judgment motion."); *see Gualandi v. Adams*, 385 F.3d 236, 245 (2d Cir.2004) ("[W]hile plaintiffs submitted an affidavit requesting discovery of particular documents and depositions, they failed to show how the information they hoped to obtain from this discovery would bear on the critical issue of who funded the Plan."); *see also Commercial Cleaning Servs., L.L.C. v. Colin Serv. Sys., Inc.*, 271 F.3d 374, 386 (2d Cir.2001) ("[W]hen a party ... reasonably advises the court that it needs discovery to be able to present facts needed to de-

fend the motion, the court should defer decision of the motion until the party has had the opportunity to take discovery and rebut the motion."). Obviously, immaterial facts are of no use to a district court. *See, e.g., Sage Realty Corp.,* 34 F.3d at 128 ("Because the documents regarding electric costs were immaterial to the calculation of the Operating Expenses under Section 22.01(III) of the Lease, the discovery INA sought would not have revealed anything new that would require the denial of summary judgment.").

### 3. What Steps Did the Requesting Party Take and Why Did the Steps Taken Fail?

A district court gives less weight to the final two requirements: "[F]ailure to comply with the third and fourth requirements is not automatically fatal to a Rule 56(f) affidavit." *Paddington Partners,* 34 F.3d at 1139. With that said, these third and fourth elements are important considerations for a district court to weigh because they help the court determine whether a party has been dilatory in conducting discovery and is only invoking Rule 56(f) to make up for its own sloth. Such an underlying purpose is impermissible. *Compare Creusot–Loire Intern., Inc. v. Coppus Eng'g Corp.,* 585 F.Supp. 45, 51 (S.D.N.Y. 1983) (denying request for additional discovery where party opposing summary judgment motion "declined to seek the information allegedly pertinent to its defense of the instant motion during the discovery period established by the Court"), *with Robinson v. Transworld Airlines, Inc.,* 947 F.2d 40, 43 (2d Cir.1991) (per curiam) (allowing a party additional discovery where there was no claim that plaintiff had been dilatory in seeking discovery), *and Quinn v. Syracuse Model Neighborhood Corp.,* 613 F.2d 438, 445 (2d Cir.1980) ("At least

when the party opposing the motion has not been dilatory in seeking discovery, summary judgment should not be granted when he is denied reasonable access to potentially favorable information.").

By example, in *Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.,* the plaintiff was put on notice by the defendants that they intended to move for summary judgment expeditiously, the plaintiff waited four months from the date of such notification before seeking any discovery from one of the defendants, and then waited until filing its memorandum in opposition to the summary judgment motion to make an indication that it considered its discovery to be inadequate for purposes of responding. 769 F.2d 919, 925–26 (2d Cir. 1985). The Second Circuit affirmed the district court's decision to deny the plaintiff's request. *Id.* at 926. In reaching its decision, the Court placed great weight on the untimeliness of such a request: "We regard all of these claims as to the need for more discovery as marginal, permissible if made in a timely fashion, but hardly adequate grounds for delay when made at the eleventh hour." *Id.; see also Carlton v. Interfaith Med. Ctr.,* 612 F.Supp. 118, 123 n. 6 (E.D.N.Y.1985) (noting that where plaintiff fails to make a showing of good cause as to why discovery was not completed by a cut-off date set for all discovery, a court will not grant additional discovery).

### B. Defendants' Specific Contentions Regarding the Need to Depose Mr. Xiji

In its previous Order, the Court denied plaintiff's motion on the ground that defendants had created a genuine and material factual dispute by casting doubt on plaintiff's evidence that it had delivered the goods to defendants in good condition.[14]

---

14. The Court held that defendants supported their argument by offering evidence about the

low probability of the Cargo being exposed to freshwater on either the Zim Jamaica or the

*Am. Home Assurance Co. v. ZIM JAMAI-CA,* 296 F.Supp.2d 494, 502–04 (S.D.N.Y. 2003) (Leisure, J.). Because plaintiff's evidence relied substantially on Messrs. Najm's and Xiji's declarations that they had witnessed and kept the Cargo in good condition prior to, and in the case of Mr. Xiji, up until its delivery to defendants, the Court noted that their credibility had been challenged inferentially by defendants' proffered evidence. *Id.* at 503. The Court stated that summary judgment was particularly inappropriate because Messrs. Najm and Xiji had not yet been deposed, and that deposition testimony is generally more reliable than statements made by affidavit, thereby implying that their depositions would be beneficial in assessing plaintiff's proof. *Id.* at 503 & n. 8.

Defendants have not deposed Mr. Xiji since the Court's prior Order. (Orzel Stmt. ¶ 3.) The parties discussed at two pre-trial conferences on March 2 and May 6, 2004, the prospect of deposing Mr. Xiji. (Orzel Stmt. ¶ 5.) Accordingly, on May 26, 2004, defendants served plaintiff's counsel with a formal notice to take Mr. Xiji's deposition. (Orzel Stmt. ¶ 5.) Defendants inquired with plaintiff again on July 2, 2004, after not receiving a response. (Orzel Stmt. ¶ 5.) On August 16, 2004, plaintiff's counsel advised defendants by telephone that Mr. Xiji was no longer employed by his former employer and plaintiff had been unable to locate him. (Orzel Stmt. ¶ 5.) In response, defendants undertook their own attempts to locate Mr. Xiji to no avail. (Orzel Stmt. ¶ 5.)

The import of Mr. Xiji's absence, defendants argue, is that plaintiff is unable to make out its prima facie case because plaintiff cannot account for whether the cargo was exposed to freshwater during the time that it was in Mr. Xiji's possession. (Orzel Stmt. ¶ 5.) They further argue that there is a strong need to depose Mr. Xiji because his credibility has been put into question by virtue of the other evidence defendants offer in support of the proposition that the cargo was delivered to Huangpu on June 8, 2000, and not June 7, 2000, as Mr. Xiji states in his declaration. (Orzel Stmt. ¶¶ 7–8; Chan Decl. ¶ 4.) The Court turns to the merits of defendants' argument.

### C. *Rule 56(f) Standards as Applied to Defendants' Contentions*

█ Defendants have, in satisfaction of Rule 56(f)'s affidavit requirement, submitted an affidavit from John A. Orzel (the "Affidavit"), counsel to defendants, who declares under penalty of perjury that defendants need to depose Mr. Xiji in order to gain further details of Mr. Xiji's carriage of the Cargo by truck from Guangzhou to Huangpu. (Orzel Stmt. ¶ 4.) The Court turns to the question whether the Affidavit satisfies the requirements established by the Second Circuit.

### 1. *What Facts Are Sought and How Will They Be Obtained?*

█ A party resisting summary judgment on the ground that it needs additional discovery must state in its affidavit what facts are sought to defend itself from summary judgment, and how they are to be obtained if additional discovery is granted. *Gurary v. Winehouse,* 190 F.3d 37, 43 (2d Cir.1999). Defendants state in the Affidavit that they seek facts from Mr. Xiji explaining exactly when the Cargo was delivered to Huangpu and what exactly transpired during the carriage of the Cargo. (Orzel Stmt. ¶ 6.) Such facts are of

other two barges in China. *Am. Home Assurance Co. v. ZIM JAMAICA,* 296 F.Supp.2d 494, 502–03 (S.D.N.Y.2003) (Leisure, J.).

particular need· because · defendants have offered evidence that delivery was made to Huangpu on June 8, in contradiction to Mr. Xiji's statement in his declaration that the Cargo was delivered on June 7. (Orzel Stmt. ¶ 7.) Assuming defendants' proffered evidence to be true, defendants seek facts explaining why the forty-mile journey took twenty-four hours (Orzel Stmt. ¶ 8) and what happened to the Cargo during this period of time (Orzel Stmt. ¶ 9). Defendants ask whether the truck was parked anytime during the twenty-four-hour period, and whether the Cargo was removed from the truck during this time. (Orzel Stmt. ¶ 10.)

The Court finds that defendants have adequately set forth what facts they seek to obtain from Mr. Xiji. Because defendants contest plaintiff's motion in part by attacking Mr. Xiji's credibility, their request to depose Mr. Xiji, whose declaration only states that he "drove the container back to the port of Huangpu" (Xiji Decl. ¶ 3), with no further detail, is a reasonable one. This is not an instance where a litigant is seeking to engage in a " 'fishing expedition' in the hope that he could come up with some tenable cause of action." The cause of action has been established, and details of Mr. Xiji's carriage are needed to assess his credibility and, by extension, the merits of plaintiff's claim. *Waldron v. Cities Serv. Co.*, 361 F.2d 671, 673 (2d Cir.1966), *aff'd, First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 274, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968).

Defendants also have satisfied the requirement that they identify how the facts are to be obtained. (Orzel Stmt. ¶¶ 3–4.) A deposition is, perhaps, the best method of assessing Mr. Xiji's credibility and discovering additional facts concerning that trip. *Perma Research & Dev. Co. v. Singer Co.*, 410 F.2d 572, 578 (2d Cir.1969); *Hayes v. N.Y. City Dept. of Corrs.*, 84 F.3d 614, 619 (2d Cir.1996) (citing *Perma Re-*

*search* with approval). *See generally* Jack H. Friedenthal et al., *Civil Procedure* § 7.8, at 422 (4th ed. 2005) ("An oral deposition .... has distinct advantages over a procedure in which a witness responds in writing to questions ... with the benefit of counsel, and with no direct confrontation by the questioning attorney."). A deposition of Mr. Xiji would likely disclose additional information because, again, Mr. Xiji was the only person handling the Cargo during the period of time in question. *Cf. 210 E. 86th St. Corp. v. Combustion Eng'g, Inc.*, 821 F.Supp. 125, 144 (S.D.N.Y.1993) (" '[P]laintiffs must identify specific issues of material fact which are *likely* to be disclosed if they are granted a reasonable opportunity to pursue the additional discovery they seek.' " (quoting *Contemporary Mission, Inc. v. N.Y. Times Co.*, 665 F.Supp. 248, 269 (S.D.N.Y.1987), *aff'd*, (2d Cir.1988))).

### 2. · *Are the Facts Sought Through Additional Discovery Material to Defendants' Opposition?*

The facts surrounding the handling of the Cargo by Mr. Xiji during his trip between Guangzhou and Huangpu are clearly material to defendants' opposition to plaintiff's summary judgment motion. As the Court held in its prior Order, and as defendants note on more than one occasion in their papers (*see, e.g.,* Orzel Stmt. ¶ 5), the denial of plaintiff's original motion turned on the fact that defendants had successfully cast doubt on plaintiff's proffer of material facts, *see Transatlantic Marine Claims Agency, Inc. v. M/V "OOCL Inspiration,"* 137 F.3d 94, 100 (2d Cir.1998) ("A second response [to a summary judgment motion under COGSA] would be to attack the plaintiff's evidence, and cast enough doubt on it to raise a genuine issue of material fact."), part and parcel of which was defendants' inferential attack on Mr. Xiji's credibility, *Am. Home*

Assurance Co. v. ZIM JAMAICA, 296 F.Supp.2d 494, 503 & n. 8 (S.D.N.Y.2003) (Leisure, J.). Because defendants attack plaintiff's evidence, a proper means of overcoming summary judgment on a COGSA claim, *Transatlantic,* 137 F.3d at 100, the deposition of Mr. Xiji will surely aid defendants' defense because, at best, plaintiff will obtain facts that flatly contradict Mr. Xiji's declaration, and, at worst, at least flesh out the details of his handling of the Cargo (*see, e.g.,* Orzel Stmt. ¶¶ 4, 6, 8, 10).

3. *The Measures Taken by Defendants to Oppose Mr. Xiji and Why Those Efforts Failed*

 The Court addresses the third and fourth requirements in tandem. District courts in this Circuit are not permitted to allow additional discovery pursuant to Rule 56(f) where the party's unfinished discovery results from its own dilatoriness. *Burlington Coat Factory Warehouse Corp. v. Esprit de Corp.,* 769 F.2d 919, 925–26 (2d Cir.1985). Consequently, a party seeking additional discovery must detail by affidavit the steps taken to gain the materials sought to be discovered, and explain why those efforts were unsuccessful. *Meloff v. N.Y. Life Ins. Co.,* 51 F.3d 372, 375 (2d Cir.1995).

Defendants assert in the Affidavit the following facts in support of these final two requirements: defendants discussed the need to depose Mr. Xiji at pre-trial conferences in March and May 2004; they then served plaintiff with notice of deposition on May 26, 2004, and followed up on said notice on July 2, 2004, after not hearing back from plaintiff's counsel; and after being told by plaintiff's counsel that Mr. Xiji could not be located, they contacted Zim Jamaica's agent in China to try to locate the driver and concurrently spoke to a former partner of counsel's law firm, who works at a law firm in Shanghai, about how to search for Mr. Xiji. (Orzel Stmt. ¶ 5.) Defendants concede that Zim Jamai-

ca's agent advised them that there was little hope in finding Mr. Xiji and that their former partner agreed, claiming that it would be impossible to find him without either an address or a Chinese identity number. (Orzel Stmt. ¶ 5.)

The primary question for the Court, which plaintiff addresses in its reply papers (Pl.'s Reply Mem. Law Supp. Mot. 5–7), is whether defendants' request for additional discovery arises because of their own prior inaction, in which case the request should be denied, *see Burlington Coat Factory,* 769 F.2d at 925–26, or whether defendants have pursued their opposition to plaintiff's summary judgment motion in an expedient manner, in which case the request should be granted, *see Quinn v. Syracuse Model Neighborhood Corp.,* 613 F.2d 438, 445 (2d Cir.1980) ("At least when the party opposing the motion has not been dilatory in seeking discovery, summary judgment should not be granted when he is denied reasonable access to potentially favorable information.").

The Court finds that defendants' inability to depose Mr. Xiji does not result from their dilatoriness, but, instead, stems from other factors out of their control—namely, the inability of Zim Jamaica, and defendants themselves, to track down the former employee of a company in a distant country. Dispositive to the Court's finding is that defendants gave notice to plaintiff of the need to depose Mr. Xiji prior to a court-imposed discovery deadline. Discovery was to be completed by August 6, 2004, and defendants' notice of deposition was made almost three months prior to this date. Upon the parties' request, the Court later extended discovery twice, setting a final completion date of December 31, 2004. The second request, made by letter dated October 26, 2004, apprised the Court of defendants' continuing efforts to locate Mr. Xiji through defense counsel's

former partner. Consequently, this is not a case where a party declined to try to discover certain information pertinent to its defense prior to the lapse of a discovery schedule set by the court. *See Creusot–Loire Intern., Inc. v. Coppus Eng'g Corp.,* 585 F.Supp. 45, 51 (S.D.N.Y.1983) (denying a request for additional discovery where the movant "declined to seek the information allegedly pertinent to its defense of the instant motion during the discovery period established by the Court").

Plaintiff argues that defendants' request should be denied because Mr. Xiji's declaration was made on April 22, 2002, yet defendants waited until May 2004 [15] to seek to depose him. This argument is ineffective because the request was made within the discovery period established by the Court. The Court has no reason to doubt that, were Mr. Xiji still in the employ of the trucking company used to move the Cargo from Guangzhou to Huangpu, defendants would have had an easier time deposing Mr. Xiji by the close of discovery. Indeed, defendants agreed to depose Mr. Najm by telephone and could have done the same with Mr. Xiji. Thus, while defendants' decision to wait until May 2004 to seek to depose Mr. Xiji ran the risk that Mr. Xiji might not still be working for the same trucking company, it does not support a denial of their request for additional discovery under the Second Circuit's four-step test.

Finding that defendants have satisfied the Second Circuit's Rule 56(f) requirements, their request for additional discovery is granted. The Court writes briefly to address the additional question whether an attempt to depose Mr. Xiji is futile.

While defendants seem to concede this possibility, the Court does not believe that it is in a position to hazard a supposition as to whether Mr. Xiji can be found and deposed. On the one hand, defendants state in the Affidavit that Zim Jamaica's agent has told them that there is "little hope" in finding the driver, and defendants' counsel's former partner told them that without Mr. Xiji's address or identity number, finding him will be "impossible." (Orzel Stmt. ¶ 5.) On the other hand, the Court does not know whether, with plaintiff's assistance, defendants will be able to procure an address, identity number, or any other information that may assist in the procurement of Mr. Xiji.

Given that discovery is designed to further the truth-seeking process, which enables litigants and the courts to develop a complete factual record, the Court believes that a continuance of sixty days, commencing on the date of entry of this Opinion and Order, solely for the purpose of locating and deposing Mr. Xiji, is proper. Given the significance of his role in the transport of the Cargo, his deposition invariably would bear some fruit in furtherance of defendants' case and therefore could alter significantly the Court's review of plaintiff's motion, which currently does not rely on a dramatically different set of asserted undisputed material facts than those offered on its original motion. The Court's holding is further supported by the fact that plaintiff and the Court will not be prejudiced if Mr. Xiji is not found in a reasonable amount of time. To the extent Mr. Xiji cannot be located, the Court will be able to decide plaintiff's summary judg-

---

**15.** Plaintiff argues in its reply brief that defendant only began its search for Mr. Xiji on August 16, 2004. (Pl.'s Reply Mem. Law Supp. Mot. 7.) While it is true that defendants began their independent search for Mr. Xiji on August 16, this was so because it was the day that plaintiff told them that Mr. Xiji was no longer available. (Orzel Stmt. ¶ 5.) Plaintiff's obfuscation does not obviate the fact that defendants undertook the process of deposing Mr. Xiji on May 26, 2004, when they noticed the deposition to defendants' counsel. (Orzel Stmt. ¶ 5, Ex. 4.)

ment motion and, if it denies the motion, prepare for trial.

### Conclusion

For the reasons set forth above, the resolution of plaintiff's motion for summary judgment is stayed pending the outcome of a sixty-day continuance, commencing on the date of entry of this Opinion and Order, which is granted for the sole purpose of deposing Lao Xiji. The Court makes no findings as to the merits of plaintiff's summary judgment motion. The parties are ORDERED to appear before this Court at 500 Pearl Street, Courtroom 18b, for a status conference on March 23, 2006 at 10:00 a.m. unless a motion is pending.

**SO ORDERED.**